UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK, | ) ) ) |
| *Plaintiff,* | ) Case No.: 10-cv-00187-JVP-SCR ) Judge: John V. Parker |
| v. | ) Magistrate Judge: Stephen C. Riedlinger ) |
| CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE, | ) ) ) |
| *Defendants.* | ) |

## FIRST AMENDED COMPLAINT

For its Complaint, Plaintiff Louisiana Environmental Action Network ("LEAN") makes the following allegations against the Defendants, City of Baton Rouge and Parish of East Baton Rouge ("the City and Parish").

### NATURE OF THE CASE

1. LEAN brings this Clean Water Act citizen enforcement suit against the City and Parish because of ongoing permit violations at three sewage treatment plants in Baton Rouge, Louisiana. These sewage treatment plants are subject to a federal consent decree, entered in United States v. City of Baton Rouge, No. 01-978-B-M3 (M.D. La. Mar. 15, 2002). But the City and Parish continue to violate their permits and also are in violation of the consent decree.

### JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on a federal question, the Clean Water Act, 33 U.S.C. § 1365, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## VENUE

3. The City and Parish's violations occur at three wastewater treatment plants located in East Baton Rouge Parish, Louisiana. Therefore, venue is proper in the Middle District of Louisiana pursuant to Clean Water Act § 505(c)(1), 33 U.S.C. § 1365(c)(1).

## NOTICE

4. On November 24, 2009, LEAN sent a Notice of Violation to the City and Parish, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of EPA, the Secretary of LDEQ, and the U.S. Attorney General pursuant to Clean Water Act § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A). LEAN sent a revised notice to those same entities on December 21, 2009. The Notice and Revised Notice clearly detailed Defendants' violations of the Clean Water Act. 40 C.F.R. § 135.3(a). The Revised Notice is attached to this Complaint as Exhibit A and incorporated by reference.

5. More than sixty days have passed since LEAN sent its Notice and Revised Notice to the City and Parish, EPA, and LDEQ.

6. Neither EPA nor LDEQ has commenced or is diligently prosecuting a civil or criminal action in court to redress the violations specified in the Notice and Revised Notice.

7. Fewer than 120 days have passed since LEAN gave its Notice and Revised Notice to the City and Parish, EPA, and LDEQ.

## PARTIES

### *A. Plaintiff*

8. Plaintiff LEAN is a non-profit community organization incorporated and operating under the laws of Louisiana. As such, LEAN is a "person" under Clean Water Act § 502(5), 33 U.S.C. § 1362(5). In addition, LEAN is a "citizen" as defined by Clean Water Act §

505(g), 33 U.S.C. § 1365(g) (defining "citizen" as a person having an interest which is or may be adversely affected).

9. LEAN serves as an umbrella organization for several environmental and citizen groups in Louisiana and also has individual members. LEAN has more than 1,700 individual members, some of whom reside, own property, work, and recreate in areas near and downstream of Defendants' plants in Baton Rouge and East Baton Rouge Parish. LEAN's purpose is to preserve and protect Louisiana's land, air, water, and other natural resources. LEAN seeks to protect its members from threats of pollution, including harmful discharges, overflows, and odors from Defendants' wastewater treatment plants. This lawsuit is germane to LEAN's purpose.

10. The Lower Mississippi Riverkeeper is a program of LEAN and is affiliated with the Waterkeeper Alliance. The Lower Mississippi Riverkeeper's purpose is to educate the public and community leaders as to the River's water quality, to strengthen the environmental community in Louisiana, to monitor and investigate reported incidents of water pollution, and to compel compliance with the Clean Water Act in an effort to reduce pollution of the River. The Lower Mississippi Riverkeeper's mission is to protect, preserve, and restore the ecological integrity of the Mississippi River Basin in Louisiana for current users and future generations through advocacy and citizen action.

11. The City and Parish's Clean Water Act violations alleged in this Complaint injure LEAN members. The violations contribute to pollution of the Mississippi and therefore impair LEAN members' use and enjoyment of that resource. Odors associated with the Defendants' violations also annoy LEAN members and impair their enjoyment of their homes and communities. These injuries are actual, concrete and irreparable and cannot be adequately remedied by money damages.

12. Plaintiff's members' injuries are fairly traceable to Defendants' permit violations and are redressable by this Court. Upon information and belief, the City and Parish will continue their violations until enjoined by this Court.

*B. Defendants*

13. Defendants City of Baton Rouge and Parish of East Baton Rouge are political subdivisions of the State of Louisiana and are both "municipalit[ies]" as defined under Clean Water Act § 502(4), 33 U.S.C. § 1362(4).

14. The City and Parish are "person[s]" as defined under Clean Water Act § 502(5), 33 U.S.C. § 1362(5).

15. The City and Parish own and operate three wastewater treatment plants, known as the North Wastewater Treatment Plant located at 55 Mills Avenue in East Baton Rouge Parish (AI# 4843); the South Wastewater Treatment Plant located at 2850 Gardere Lane in East Baton Rouge Parish (AI# 4841); and the Central Wastewater Treatment Plant located at 2443 River Road in East Baton Rouge Parish (AI# 4842).

## LEGAL BACKGROUND

16. The purpose of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Clean Water Act § 101(a), 33 U.S.C. § 1251(a).

17. Clean Water Act § 301(a), 33 U.S.C. § 1311(a) prohibits the "discharge of any pollutant" that violates a permit issued pursuant to Clean Water Act § 402, 33 U.S.C. § 1342.

18. LDEQ administers the Clean Water Act permit program in Louisiana pursuant to Clean Water Act § 402(b), 33 U.S.C. § 1342(b), under a program called the Louisiana Pollution Discharge Elimination System ("LPDES"). *See* Clean Water Act §§ 402(b) & (c), 33 U.S.C. § 1342(b) & (c).

19. LDEQ issued LPDES Permits Nos. LA0036439, LA0036421, and LA0036412 to the City and Parish pursuant to Clean Water Act § 402(b), 33 U.S.C. § 1342(b).

20. Under Clean Water Act §§ 502(12) and (16), a "discharge" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §§ 1362(12) & (16). *See also* 40 C.F.R. § 122.2.

21. The Clean Water Act defines "pollutant" to include "solid waste, … sewage, … sewage sludge, … chemical wastes, biological materials, … and industrial, municipal, and agricultural waste discharged into water." Clean Water Act § 502(6), 33 U.S.C. § 1362(6).

22. A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit … from which pollutants are or may be discharged." Clean Water Act § 502(14), 33 U.S.C. § 1362(14).

23. "Publically owned treatment works" is defined to include "devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature [and] also includes sewers, pipes and other conveyances … if they convey wastewater to a POTW Treatment Plant." 40 C.F.R. § 403.3(q).

24. The Clean Water Act and LPDES Program regulations require anyone who holds an LPDES permit to monitor their discharges and report information about their discharges to LDEQ in "Discharge Monitoring Reports." *See* Clean Water Act § 308, 33 U.S.C. 1318(a); La. Admin. Code tit. 33, pt. IX, § 2701.J-L.

25. A standard condition in permits issued to publicly owned treatment works requires that the permit holder reduce the amount of Biochemical Oxygen Demand ("BOD") and Total Suspended Solids ("TSS") such that the thirty day average amount of BOD and TSS in the wastewater discharge from the plant is at least eight-five percent (85%) less than the amount of

BOD and TSS in the sewage entering into the plant. 40 C.F.R. § 133.102. This requirement is commonly known as the Eighty-Five Percent Rule.

26. The Clean Water Act provides that "any citizen may commence a civil action on his own behalf … against any person who is alleged to be in violation of (A) an effluent standard or limitation under this Act …" Clean Water Act § 505(a)(1), 33 U.S.C. § 1365(a)(1). Any person in violation of the Clean Water Act is subject to a civil penalty of up to $37,500 per day for each violation. 40 C.F.R. § 19.4.

## FACTS

27. The City and Parish discharge treated sanitary wastewater from point sources at the North, Central, and South Wastewater Treatment Plants in violation of the limits and permit conditions applicable to those plants.

28. On March 3, 1988, the United States filed United States v. Baton Rouge, alleging violations of the Clean Water Act at the North, Central, and South Wastewater Treatment Plants. No. 88-191A (M.D. La.).

29. On December 23, 1988, the Middle District of Louisiana entered a Consent Decree to resolve the claims alleged in United States v. Baton Rouge.

30. The Middle District of Louisiana entered a subsequent Consent Decree ("2002 Consent Decree") in United States v. City of Baton Rouge, No. 01-978-B-M3 (M.D. La. Mar. 15, 2002) which superseded and terminated the December 23, 1988 Consent Decree.

31. The 2002 Consent Decree provides for less stringent effluent limitations of 75% BOD and TSS reduction, as opposed to the 85% reduction requirement in the permits.

32. The 2002 Consent Decree does not change or supersede the requirements of permit Nos. LA0036439, LA0036421, and LA0036412.

101-117

33. Permits Nos. LA0036439, LA0036421, and LA0036412 set effluent limits for discharges of BOD and TSS from the North, Central, and South Wastewater Treatment Plants as follows:

- The thirty (30) day average amount of BOD in the wastewater discharged from the North, Central, and South Wastewater Treatment Plants must be at least 85 percent less than the amount of BOD in the sewage entering the plant

- The thirty (30) day average amount of TSS in the wastewater discharged from the North, Central, and South Wastewater Treatment Plants must be at least 85 percent less than the amount of TSS in the sewage entering the plant

34. Defendants have a duty to comply with all conditions of Permits Nos. LA0036439, LA0036421, and LA0036412. Noncompliance constitutes a violation of the Clean Water act. *See* 40 C.F.R. § 122.41(a).

35. The City and Parish's Discharge Monitoring Reports show that the City and Parish violate both the 85% reduction requirement, as set out in Permits Nos. LA0036439, LA0036421, and LA0036412, and the less stringent 75% reduction requirement set out in the consent decree, for BOD and TSS.

36. Since at least January 2008, Defendants have exceeded the monthly maximum effluent limit for BOD for the North Wastewater Treatment Plant at least thirteen (13) times, with concentrations in violation of the 85% reduction requirement.

37. Since at least January 2008, Defendants have exceeded the monthly maximum effluent limit for BOD for the Central Wastewater Treatment Plant at least sixteen (16) times, with concentrations in violation of the 85% reduction requirement.

38. Since at least January 2008, Defendants have exceeded the monthly maximum effluent limit for BOD for the South Wastewater Treatment Plant at least twenty three (23) times, with concentrations in violation of the 85% reduction requirement.

39. Since at least January 2008, Defendants have exceeded the monthly maximum effluent limit for TSS for the Central Wastewater Treatment Plant at least two (2) times, with concentrations in violation of the 85% reduction requirement.

40. Since at least January 2008, Defendants have exceeded the monthly maximum effluent limit for TSS for the South Wastewater Treatment Plant at least six (6) times, with concentrations in violation of the 85% reduction requirement.

41. Since at least January 2007, Defendants' thirty (30) day average amount of BOD in the wastewater discharged from the Central Wastewater Treatment Plant was in violation of the 75% interim consent decree reduction requirement at least three (3) times.

42. Since at least January 2007, Defendants' thirty (30) day average amount of BOD in the wastewater discharged from the South Wastewater Treatment Plant was in violation of the 75% interim consent decree reduction requirement at least eleven (11) times.

43. BOD is directly related to the amount of dissolved oxygen in rivers and streams. The greater the biological oxygen demand, the faster oxygen is depleted in the stream, so less oxygen is available. Low or no availability of oxygen will cause aquatic organisms to become stressed, suffocate, and die.

44. High concentrations of TSS in a river diminish water quality. Other pollutants and pathogens adhere to TSS and are transported by them. TSS also affects water clarity. High levels of TSS block light from reaching submerged vegetation, which slows down photosynthesis thereby decreasing the amount of oxygen released by these plants into the environment. If light is completely blocked, plants will stop producing oxygen and die. Decomposing plants use up even

8

101-117
Case 3:10-cv-00187-BAJ-SCR   Document 4   03/30/10   Page 8 of 11

more oxygen. Low dissolved oxygen can lead to fish kills. TSS also causes surface water temperature to rise, since the suspended particles absorb heat from sunlight.

45. Sanitary sewage overflow is a condition in which untreated sewage is discharged into the environment before treatment. Sanitary sewage overflow can cause human health impacts such as gastrointestinal illness, swimming restrictions, and the prohibition of consumption of certain aquatic animals after overflow events. Potential ecological consequences include fish kills and harm to plankton. Turbidity increase and dissolved oxygen decrease in receiving waters can lead to accentuated effects.

46. Untreated wastewater and raw sewerage have been discharged into residential areas in association with the activities of the North, Central, and South Wastewater Treatment Plants.

47. The City and Parish's three plants emit a stench in the areas surrounding those plants.

## FIRST CAUSE OF ACTION

48. Plaintiff incorporates the allegations of paragraphs 1 through 47.

49. The Mississippi River is "navigable water" and "waters of the United States under Clean Water Act § 502(7), 33 U.S.C. § 1362(7).

50. The City and Parish discharge treated wastewater from the North, Central, and South Wastewater Treatment Plants into the Mississippi River from Outfalls 001A.

51. The North, Central, and South Wastewater Treatment Plants' Outfalls 001A are point sources.

52. Defendants' discharges violate Permits Nos. LA0036439, LA0036421, and LA0036412.

53. BOD and TSS are "pollutants" as defined by Clean Water Act § 502(6) and (14), 33 U.S.C. § 1362(6) and (14).

## SECOND CAUSE OF ACTION

54. Plaintiff incorporates the allegations of paragraphs 1 through 47.

55. Defendants are in violation of Section III(B)(3) of their permits by failing to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance …."

56. Defendants are in violation of "regulation[s issued] under section 1345(d) of" Title 33.

57. Defendants' violations of Section III(B)(3) of their permits and of regulations issued under 33 U.S.C. § 1345 cause and contribute to sanitary sewer overflows including overflows of untreated wastewater in residential areas.

58. Violations of permit conditions and of regulations issued under 33 U.S.C. § 1345 are violations of an "effluent standard or limitation" as 33 U.S.C. § 1365(f) defines that phrase. Accordingly, such violations are subject to enforcement in this action under 33 U.S.C. § 1365(a).

## RELIEF

WHEREFORE, LEAN prays that the Court award the following relief:

A. A declaration that Defendants are in violation of the Clean Water Act and Permit Nos. LA0036439, LA0036421, and LA0036412.

B. An injunction against Defendants compelling compliance with Permits Nos. LA0036439, LA0036421, and LA0036412.

C. An award of civil penalties, payable to the U.S. Treasury, of up to $37,500 per day per violation for each violation of the Act pursuant to Clean Water Act § 309(d), 33 U.S.C. 1319(d); 40 C.F.R. § 122.41(a)(2); 40 C.F.R. § 19.4.

10

101-117

Case 3:10-cv-00187-BAJ-SCR   Document 4   03/30/10   Page 10 of 11

D. Plaintiff further requests attorney fees and expert witness fees, and reasonable litigation expenses incurred in this case.

E. Such other relief as this Court may deem appropriate.

Respectfully submitted on March 30, 2010,

s/ Melissa Marsh

_____
Melissa Marsh, Student Attorney

s/ Adam Babich

_____
Adam Babich, La. Bar No. 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, LA 70118-6321
Phone: (504) 865-5789; direct dial 862-8800
Fax: (504) 862-8721
Counsel for Louisiana Environmental Action Network

11
Case 3:10-cv-00187-BAJ-SCR   Document 4   03/30/10   Page 11 of 11

101-117