# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK, | ) ) ) | |
| *Plaintiff* | ) ) | |
| v. | ) ) | Civil Action No. 10-cv-00187-JVP_SCR |
| CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE | ) ) ) | |
| *Defendant* | ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

The City of Baton Rouge and Parish of East Baton Rouge ("City-Parish") are made defendants by Louisiana Environmental Action Network, Inc. in this action brought under the citizen suit provisions of the Clean Water Act. This action was filed over eight years after EPA and Louisiana Department of Environmental Quality filed a complaint against the City-Parish and the parties entered a Consent Decree subsequently approved by the court on the same issues. Since entering into the Consent Decree, the City-Parish has completed all of the required First Remedial Action Plan measures and has begun the planning and construction of the Second Remedial Action Plan measures. During the calender year 2010, the City-Parish plans to let design and construction projects pursuant to the Second Remedial Action Plan in excess of $400 million with a like amount to be let in 2011.

Since the institution of the Consent Decree, the City-Parish, EPA, and LDEQ have been

Case 3:10-cv-00187-BAJ-SCR   Document 7-1   06/03/10   Page 1 of 11

actively working toward the successful completion of the projects in conformance with the Consent Decree time line. Despite these ongoing efforts, LEAN filed the underlying complaint. In response, the City-Parish files this Motion to Dismiss with a request for litigation expenses.

## II. ISSUE PRESENTED

This motion presents the court with a single issue:

> The Clean Water Act explicitly prohibits a citizen suit where the United States or a State is diligently prosecuting an action against the same defendant. LEAN admits that the City -Parish is subject to a Consent Decree with the United States and the State of Louisiana which allows the City-Parish to come into compliance with the Clean Water Act though an extensive Remedial Action Plan. Given that the law clearly prohibits a citizen suit in this instance, is LEAN's claim barred?

## III. FACTS

The City of Baton Rouge and Parish of East Baton Rouge own and operate three wastewater treatment plants: the North Wastewater Treatment Plant, the Central Wastewater Treatment Plant, and the South Wastewater Treatment Plant. All three treatment plants are permitted by the State of Louisiana, Department of Environmental Quality and the Untied States of America Environmental Protection Agency.

In 2001, the United States of America, through the Environmental Protection Agency, and State of Louisiana Department of Environmental Quality filed a civil action against the City of Baton Rouge and Parish of East Baton Rouge for alleged violations of the Clean Water Act as a result of sanitary sewer overflows and effluent limit violations from the three treatment plants.[1] In March 2002, the parties to that suit negotiated and entered a Consent Decree to allow the City-Parish to undertake an extensive Remedial Measure Action Plan to come into compliance with the

---

[1] *U.S. v. City of Baton Rouge*, No. 01--978 (M.D. La.).

Case 3:10-cv-00187-BAJ-SCR    Document 7-1    06/03/10    Page 2 of 11

Clean Water Act no later than January 15, 2015.[2]  The district court approved and entered the

Consent Decree on March 15, 2002.[3]  In October 2008, the parties agreed upon and filed a

modification to the 2002 Consent Decree to allow for changes to the Remedial Measure Action

Plan, but the date for compliance remains unchanged.[4]  That modification was approved and

entered by the court in April 2009.[5]  Both the 2002 and modified 2008 Consent Decrees were

subject to a public comment period.[6]

  One of the objectives of the Consent Decree is to require "the City/Parish to achieve and

maintain compliance with its NPDES permits and the [Clean Water Act]."[7]  In furtherance of that

objective, the City-Parish is required to implement specific remedial measures.  These measures are

designed to bring the City-Parish into compliance with the Eighty-Five Percent Rule[8] and eliminate

sanitary sewer overflows.  Additionally, the City-Parish is subject to stipulated penalties for certain

violations of the terms of the Consent Decree and NPDES permits.  The liability for violations is

limited in the Consent Decree to failure to comply with an "interim effluent limitation" as opposed

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] 73 Fed. Reg. 67882 (2008); 67 Fed. Reg. 2669 (2002).

[7] 2002 Consent Decree, ¶ 11(A).

[8] The requirement in NPDES permits whereby the permitee must reduce the amount of biochemical oxygen demand ("BOD") and total suspended solids ("TSS") such that the thirty day average amount of BOD and TSS in the wastewater discharged from the treatment plants is at least eighty-five percent less than the amount of BOD and TSS in the sewage entering the plant.

Page 3 of  11

Case 3:10-cv-00187-BAJ-SCR   Document 7-1   06/03/10   Page 3 of 11

to the Eighty-Five Percent Rule.[9] That interim effluent limitation set forth in the Consent Decree states that prior to January 1, 2015:

> [T]he City/Parish shall not be liable for stipulated penalties for failure to comply with the Eighty-Five Percent Rule . . .provided that the thirty (30) day average amount of BOD and TSS in the waste water discharged from the North, Central, and South plants is at least seventy-five percent (75%) less than the amount of BOD and TSS in the sewage entering the plant.[10]

These measures were agreed to by the EPA, LDEQ, and City-Parish in an effort to bring the City-Parish into compliance with the Clean Water Act and in the process "avoid complicated litigation between the Parties."[11] Furthermore, all parties agreed that the Consent Decree is "fair, reasonable, and in the public interest."[12]

## IV. PROCEDURAL POSTURE

Despite the current Consent Decree and the Clean Water Act's prohibition of a citizen suit in this circumstance, LEAN has brought the present citizen suit against the City-Parish for alleged violations that are covered by the Consent Decree.

LEAN's first claim for relief alleges that discharges of treated wastewater from the treatment plants violated the City-Parish's discharge permits.[13] LEAN's second claim for relief alleges that the City-Parish's violations of the discharge permits cause and contribute to sanitary sewer overflows.[14] LEAN seeks a declaratory judgment, civil penalties, injunctive relief, and attorney's fees and expenses

---

[9] 2002 Consent Decree ¶ 39.

[10] *Id.*

[11] 2002 Consent Decree ¶ I (G).

[12] *Id.*

[13] Pl.'s Compl. ¶¶ 52-53.

[14] Pl.'s Compl. ¶ 57.

Case 3:10-cv-00187-BAJ-SCR   Document 7-1   06/03/10   Page 4 of 11

on both claims.[15]  Both claims pertain to violations that require compliance with the same standards that are the subject of the 2001 EPA suit against the City-Parish and subsequent Consent Decree.  Those claims are, in part, LEAN's attempt to hold the City-Parish to the Eighty-Five Percent Rule as opposed to the interim effluent limit in the Consent Decree.  Those claims are also LEAN's attempt to second guess the manner and means EPA and LDEQ are using to enforce the interim effluent limitation under the Consent Decree.  That Consent Decree and the administration of compliance with the Consent Decree are part of EPA and LDEQ's diligent prosecution of the City-Parish for Clean Water Act violations.

### V. LAW AND ARGUMENT:
**Plaintiff's Clean Water Act Claims should be dismissed under 33 U.S.C. § 1365(b)(1(B), because EPA is diligently prosecuting its own CWA enforcement action.**

#### A.  The Litigation Preclusion in 33 U.S.C. § 1365(b)(1(B)

The Clean Water Act[16] allows any citizen to bring a civil action against any person who is allegedly violating the effluent standards of the Clean Water Act.[17]  The Act, however, prohibits such an action in two instances.  First, the action is prohibited if the citizen does not provide proper notice of the violation.[18]  Second, the action is prohibited if the Administrator of the EPA is "diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order."[19]

The litigation preclusion in the Clean Water Act exists because Congress intended for the Act to

---

[15] Pl.'s Comp. ¶¶ A -D..

[16] 33 U.S.C. §1251 et seq.

[17] 33 U.S.C. §1365(a).

[18] 33 U.S.C. §1365(b)(1)(A).

[19] 33 U.S.C. §1365(b)(1)(B).

Case 3:10-cv-00187-BAJ-SCR   Document 7-1    06/03/10   Page 5 of 11

give primary enforcement authority to the governmental regulatory agencies.[20]  As evidenced by this prohibition on a citizen suit set forth in  §1365(b)(1)(B), Congress did not intend for a citizen suit to second guess agency discretion; and as the Tenth Circuit notes, "the citizen suit is meant to supplement rather than to supplant governmental action."[21]

In order to meet the standard for litigation preclusion in the Act, the governmental prosecution is not required to be "far-reaching or zealous", but "diligent".[22]  To be held to be a diligent prosecution, the strategy and accomplishments of the EPA are not required to coincide with those of the citizen-plaintiff.[23]  The governmental action need not demand the same relief sought in a citizen suit, assert the same theories, or take the precise action as a citizen-plaintiff.[24]  Moreover, the fact that an agency has entered into a Consent Decree with a violator that establishes a prospective schedule of compliance does not establish lack of diligence.[25]

Again, as noted by the Tenth Circuit, there is a "careful distribution of enforcement authority among the federal EPA, the States, and private citizens," giving primary enforcement authority to the EPA and State and "permit a citizen to act where the EPA has 'failed to do so, not where the EPA has

---

[20] *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987); *Karr v. Hefner*, 475 F.3d 1192, 1197 (10th Cir. 2007).

[21] *Karr*, 475 F.3d at 1197 (quoting *Gwaltney*, 484 U.S. at 60).

[22] *Karr*, 475 F.3d.at 1197.

[23] *Karr*, 475 F.3d at 1197, 1199.

[24] *Supporters to Oppose Pollution, Inc. v. The Heritage Group*, 973 F.2d 1320, 1323-24 (7th Cir. 1992).

[25] *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318 (1982) (noting that "enforcement actions typically result, by consent or otherwise, in a remedial order setting out a detailed schedule of compliance designed to cure the identified violation of the Act.").

Case 3:10-cv-00187-BAJ-SCR   Document 7-1    06/03/10   Page 6 of 11

acted but has not acted aggressively enough in the citizens' view."[26]  Stated another way by the Eighth Circuit, the citizen suit statute is "not intended to enable citizens to commandeer the federal enforcement machinery."[27]

In another case decided by the Eighth Circuit, the court in *Arkansas Wildlife Fed'n v. ICI Americas, Inc.*[28] the citizen-plaintiff argued that the state environmental regulatory agency abandoned its enforcement powers by failing to "address the [defendant's] violations . . .and assessed insignificant amounts civil penalties."[29]  Even in light of such argument, the court held that courts must defer to the "expertise" of agencies enforcing environmental laws and that "[i]t would be unreasonable and inappropriate to find failure to diligently prosecute simply because the defendant prevailed in some fashion or because a compromise was reached."[30]  In sum, courts afford the EPA a high level of deference when determining whether it is diligently prosecuting any alleged violations.[31]

Such deference is necessary to ensure that EPA is able to negotiate and enter Consent Decrees and settlements with defendants in these cases.[32]  If a citizen-plaintiff could file suit even when a defendant has made concessions with the government and agreed to undertake expensive and expansive changes, defendants simply wouldn't agree to those remedial measures.[33]  The EPA would be stripped

---

[26] *Karr*, 475 F.3d at 1197 (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004).

[27] *United States Environmental Protection Agency v. City of Green Forest Ark*, 921 F.2d 1394, 1402 (8th Cir. 1990).

[28] 29 F.3d 376, 380-81 (8th Cir. 1994).

[29] *Id.* at 380.

[30] *Id.*

[31] *Karr*, 475 F.3d at 1198.

[32] *Karr*, 475 F.3d at 1197, 1198.

[33] *Id.*

Case 3:10-cv-00187-BAJ-SCR   Document 7-1    06/03/10   Page 7 of 11

of its ability to make and ask for concessions in negotiations if its very aim and strategy could be undermined by a citizen-plaintiff unhappy with the result.

The "interstitial"[34] role that Congress intended for a citizen to play in the enforcement of the Clean Water Act does not in any way prevent interested private parties from participating in the process. Any private citizen has the right to intervene in the government's action under §1365(b)(1)(B).[35]  The governmental agency, however, retains control of enforcement when that agency is diligently prosecuting the defendant.

B.  Application of 33 U.S.C. § 1365(b)(1(B) to this case.

LEAN alleges in its Complaint that neither EPA nor LDEQ has commenced or is diligently prosecuting a civil or criminal action in court to redress the violations specified;[36] however, its own acknowledgment of the 2002 Consent Decree contradicts that position.[37]

In this case, as stated above and as LEAN admits in its complaint, EPA commenced a Clean Water Act enforcement action against the City-Parish before plaintiffs filed their citizen suit.  The Consent Decree that resulted from that suit requires action by the City-Parish that goes over and above the minimum required by the applicable agency regulations.  The district court entered the decree after review in 2002 and the modification in 2009.  The EPA and the City-Parish negotiated extensively and each made concessions to the other to reach a Consent Decree that will bring the treatment plants into compliance with the Clean Water Act and NPDES permits through physically and financially extensive remedial efforts over a period of time that makes the changes feasible for the City-Parish.

---

[34]  *Gwaltney*, 484 U.S. at 61.

[35]  *Supporters to Oppose Pollution, Inc.*, 973 F.2d at 1324.

[36]  Pl.'s Compl. ¶ 6.

[37]  Pl.'s Compl. ¶1.

Case 3:10-cv-00187-BAJ-SCR   Document 7-1    06/03/10   Page 8 of 11

In its complaint, LEAN alleges that the Consent Decree "does not change or supercede the requirements" of the City-Parish's NPDES permits for the treatment plants,[38] while also acknowledging that the Consent Decree "provides for less stringent effluent limitations of 75% . . . as opposed to the 85% reduction require[d] in the permits."[39]  Both statements cannot be true.  If the Consent Decree provides for "a less stringent effluent limitation . . . than that require[d] in the permits", then the Eighty-Five Percent Rule does not apply.

The Consent Decree expressly covers the City-Parish's "violations of the CWA and the National Pollution Discharge Elimination System permits issued to the City-Parish for its sewage treatment plants."[40]  In other words, the 85% requirement in the NPDES permits is effectively superceded by the 75% interim limit in the Consent Decree "beginning on the date of entry of the Consent Decree and ending on the date for completion of construction and fully operational status."[41]  The Consent Decree goes on to say, "[d]uring this period, *the City-Parish shall not be liable for stipulated penalties for failure to comply with the Eighty-Five Percent Rule* as specified in NPDES Permits" provided that the City-Parish remains in compliance with the 75% interim effluent limit.[42]  LEAN's claims are in direct conflict with the plain language of the Consent Decree.

Despite LEAN's apparent dissatisfaction with the interim effluent limit agreed to by EPA and LDEQ and how the interim effluent limits is being applied, the Consent Decree (and thus the interim effluent limitation found therein) is part of EPA and LDEQ's diligent prosecution of the City-Parish

---

[38] Pl.'s Compl. ¶32.

[39] Pl.'s Compl. ¶31.

[40] 2002 Consent Decree ¶I, E.

[41] 2002 Consent Decree ¶39.

[42] *Id.* (emphasis added).

Case 3:10-cv-00187-BAJ-SCR    Document 7-1    06/03/10    Page 9 of 11

under the statute. EPA and LDEQ are actively pursuing judicial enforcement of the CWA against the City-Parish as set forth in the Consent Decree. The City-Parish is subject to an ongoing court order and its compliance in all respects is being overseen by EPA, LDEQ, and the court. LEAN may not agree with how EPA or LDEQ is exercising its oversight, the concessions, or the time frame agreed to by the parites, but as the courts have held,[43] the citizen-plaintiff need not agree with the course of action chosen by the EPA. The Clean Water Act has vested EPA with the primary authority to determine those tactical decisions without fear of having a citizen-plaintiff look over its shoulder. The prosecution by EPA and the LDEQ is and has indeed been diligent. Consequently, under §1365(b)(1)(B), LEAN is barred from making these claims.

## VI. CONCLUSION

In view of the 2002 Consent Decree and the applicable statute, allowing LEAN to maintain this citizen suit undermines the enforcement scheme established by Congress in the Clean Water Act. The government agency was intended to take the lead in enforcement actions and has done precisely that in the present case. EPA and the LDEQ are diligently prosecuting the City-Parish, as envisioned by the Clean Water Act and therefore the citizen suit by LEAN is barred and must be dismissed.

---

[43] *Gwaltney*, 484 U.S. 49; *Karr*, 475 F.3d 1192;. *Arkansas Wildlife Fed'n*, 29 F.3d 376.

Case 3:10-cv-00187-BAJ-SCR   Document 7-1   06/03/10   Page 10 of 11

If the Court grants this motion to dismiss, the City-Parish respectfully requests that as the prevailing party under 33 U.S.C. §1365(d), the Court also award litigation costs including attorney fees to the City-Parish.

**RESPECTFULLY SUBMITTED**
MARY E. ROPER
PARISH ATTORNEY


/s/Robert H. Abbott III
Robert H. Abbott, III (#02278)
Sr. Special Assistant Parish Attorney
Ashley W. Beck (#30180)
Assistant Parish Attorney
222 Saint Louis Street, Room 902
Baton Rouge, Louisiana 70802
Phone: 389-3114
Fax: 389-5554
babbott@brgov.com
abeck@brgov.com


## CERTIFICATE

**I HEREBY CERTIFY** that a copy of the foregoing Motion to Dismiss was this day electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record, who are as follows: Adam Babich, Attorney, Tulane Environmental Law Clinic, 6329 Freret Street, New Orleans, LA 70118; by operation of the Court's electronic filing system, and by this date depositing same in the United States Mail, first class postage prepaid, and sent to their last known address.

Baton Rouge, Louisiana, this 3rd day of June, 2010.

/s/**Robert H. Abbott, III**
**Robert H. Abbott, III**

Case 3:10-cv-00187-BAJ-SCR   Document 7-1   06/03/10   Page 11 of 11