UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK, | ) ) ) | |
| *Plaintiff* | ) ) ) | |
| v. | ) ) | Civil Action No. 10-cv-00187-BAJ-SCR |
| CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE | ) ) ) ) | |
| *Defendant* | ) | |

**DEFENDANT"S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant City of Baton Rouge/Parish of East Baton Rouge ("City-Parish") respectfully submits its Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss (No. 10).

### Argument

**I. The Consent Decree is a living document that establishes requirements for the City-Parish and is under the supervision of EPA and LDEQ.**

LEAN characterizes the Consent Decree between the City-Parish, EPA, and LDEQ as "an 8 year old document -in an administratively closed case". This characterization is an attempt to minimize the role of the Consent Decree in resolving the underlying issues for the suit brought by EPA and LDEQ against the City-Parish, the same issues that LEAN is attempting to litigate here. Quite the contrary, the Consent Decree is a complex living document that is being actively pursued by the parties to the Consent Decree. Under the Consent Decree, the City-Parish is required to report quarterly to the EPA, and the City-Parish is in the midst of performing the tasks required by

Case 3:10-cv-00187-BAJ-SCR   Document 12-1   07/02/10   Page 1 of 6

the Second Remedial Action Plan pursuant to the directives of the Consent Decree. The Second Remedial Action Plan was agreed to by the City-Parish, EPA, and LDEQ in 2008 and is set forth in the Consent Decree. It requires repairs and improvements to the wastewater treatment system that will cure the exact issues LEAN complains of in the subject suit.

Further, although LEAN's opposition states otherwise, the Consent Decree does not extinguish claims by EPA or LDEQ against the City-Parish under the Clean Water Act, it merely defers action on the claims at the discretion of EPA. Contrary to LEAN's preference, that discretion lies wholly with EPA and not with a citizen-complainant. If EPA deems it in the best interest of the public for the City-Parish's resources to be directed to implementing the Second Remedial Action Plan, then under the Consent Decree and under the statutory scheme established by Congress, EPA has that authority.

**II. The Consent Decree does not change the permit conditions, but rather establishes an agreement between the City-Parish, EPA, and LDEQ for enforcement of those permits.**

In its Memorandum in Opposition to the City-Parish's Motion to Dismiss, LEAN cites a 1991 case from the District of New Jersey. That case, *Public Interest Research Group of New Jersey v. Yates Industries, Inc.*[1], was a citizen suit that dealt with a NPDES permit that was neither the subject of a Consent Decree nor a prior suit brought by the EPA or state regulatory agency. The defendant in Yates sought modification of its NPDES permits, and allegedly received a verbal representation that portions of the permit would not be enforced. The defendant did not, however, have any proof of a modification to the permit nor did it have a Consent Decree entered and approved by a Federal District Court that implemented interim limitations different from those in the originally issued

---

[1] 757 F. Supp. 438 (D. N.J. 1991).

Case 3:10-cv-00187-BAJ-SCR    Document 12-1    07/02/10    Page 2 of 6

permit

The opposite is true in the case at hand.  The City-Parish entered the currently in effect Consent Decree with EPA and LDEQ after substantial negotiation and concession by each party and that Decree was approved and entered by the Court.  The permit has not been modified, but the entities with the authority to enforce the permit requirements are parties to the Consent Decree and have agreed through the Consent Decree to apply interim effluent limitations while the City-Parish prosecutes work on remedial measures to cure the Clean Water Act violations.

LEAN goes on to cite a 2005 case from the Eastern District of Louisiana which was a citizen suit under the Clean Air Act against a defendant refinery.  In that case, *St. Bernard Citizens for Environmental Qaulity, Inc. v. Chalmette Refining, L.L.C.*[2], as LEAN points out, the court found that the "Administrative Order of Consent" did not alter the defendant's permit.[3]  In accordance with that finding, the court held that the defendant was "not excused from the terms of that permit."[4]  However, the "Administrative Order of Consent" at issue in that case was agreed to by LDEQ and not by the EPA and had not been approved or entered by a court of competent jurisdiction.[5]  The court made a point of emphasizing the primary role of EPA in enforcement of permits; and in spite of agreements or determinations made by LDEQ, EPA had not made the same determinations.[6]  Further, the "Administrative Order of Consent" expressly required the defendant to submit updated Clean Air Act permit applications, and during the pendency of those applications, LDEQ would

---

[2] 399 F. Supp. 2d 726 (E.D. La. 2005).

[3] *Id.* at 735.

[4] *Id.*

[5] *Id.* at 734.

[6] *Id.*

Case 3:10-cv-00187-BAJ-SCR    Document 12-1    07/02/10    Page 3 of 6

enforce the interim emission limitations.[7]  Again, EPA had not agreed to the same terms, the order at issue was not approved by a court of competence jurisdiction, and there was nothing to indicate that a new permit application was forthcoming.

Finally, LEAN failed to acknowledge that the Chalmette Refining case was subsequently revisited by the Eastern District and Judge Vance in a 2007 case even though counsel for LEAN was an attorney of record for the plaintiffs in both suits.[8]  In the intervening time, Chalmette Refining entered a Consent Decree with EPA and LDEQ, approved by both federal and state courts.[9]  As a result, the court held that the consent decree between the defendant, EPA, and LDEQ and approved by courts of competent jurisdiction barred, on res judicata grounds, the citizen suit against the refinery for the same Clean Air Act violation.[10]  In support of that holding, the court stated that "the comprehensive nature of the EPA and LDEQ consent decree leads the Court to conclude that there has been a 'diligent prosecution' by the government enforcement agencies."[11]

Similarly, in the case at hand, there is a complex consent decree in place that was agreed to by the City-Parish, EPA, and LDEQ and approved and entered by the Federal District Court.  As recently as April 2009, this Court approved an amendment to that Consent Decree and the City-Parish continues to let bids and prosecute work in furtherance of the same document.

---

[7] *Id.*

[8] 500 F. Supp. 2d 592 (E.D.La. 2007).

[9] *Id.* at 596.

[10] *Id.*

[11] *Id.* at 610.

### III. The existence of the Consent Decree and evidence of work being performed in furtherance of its directive, among other things, are evidence of diligent prosecution

As stated in the previous section, in the Chalmette Refining case cited above,[12] the existence of a comprehensive Consent Decree was evidence of diligent prosecution.[13] Under the directives of the Consent Decree between the City-Parish, EPA, and LDEQ the City-Parish will let in excess of $400 million in construction projects in 2010 to prosecute the Second Remedial Action Plan. The City-Parish will let a similar amount in the 2011 calender year.

These facts are part of the public record established during the almost weekly open meetings of the Metropolitan Council which are broadcast publicly on cable television, by the public bid process and by the visible construction throughout the parish. LEAN is aware that EPA feels it is diligently prosecuting the Consent Decree and opposes its position in this matter as its counsel was the recipient of two letters, one directed to Mr. Babich from Scott McDonald, Chief Water Enforcement Officer for EPA Region 6, dated March 25, 2010, and a second letter, copied to Mr. Babich, from Michael T. Donnellan, Asst. U.S. Attorney, dated May 28, 2010, confirming that EPA has not changed its legal position stated in the March 25th letter. While the City-Parish is aware that the Court cannot consider evidence beyond the pleadings, the letters are attached should the Court decide to exercise its discretion and convert Respondent's Motion to Dismiss to a Motion for Summary Judgment.

### Conclusion

Based on the foregoing, the City-Parish respectfully requests that the Court grants the City-

---

[12] *Id.*

[13] *Id.* at 610.

Parish's motion to dismiss and that the Court award litigation costs including attorney fees to the City-Parish as requested in its original motion.

**RESPECTFULLY SUBMITTED**
MARY E. ROPER
PARISH ATTORNEY

/s/Robert H. Abbott III
Robert H. Abbott, III (#02278)
Sr. Special Assistant Parish Attorney
Ashley W. Beck (#30180)
Assistant Parish Attorney
222 Saint Louis Street, Room 902
Baton Rouge, Louisiana 70802
Phone: 389-3114
Fax: 389-5554
babbott@brgov.com
abeck@brgov.com

## CERTIFICATE

**I HEREBY CERTIFY** that a copy of the foregoing Motion to Dismiss was this day electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record, who are as follows: Adam Babich, Attorney, Tulane Environmental Law Clinic, 6329 Freret Street, New Orleans, LA 70118; by operation of the Court's electronic filing system, and by this date depositing same in the United States Mail, first class postage prepaid, and sent to their last known address.

Baton Rouge, Louisiana, this 2nd day of July, 2010.

/s/**Robert H. Abbott, III**
**Robert H. Abbott, III**
