UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUISIANA ENVIRONMENTAL
ACTION NETWORK

VERSUS

CITY OF BATON ROUGE AND
PARISH OF EAST BATON ROUGE

CIVIL ACTION

NO. 10-187-BAJ-SCR

## RULING ON MOTION TO DISMISS

This matter is before the Court on City of Baton Rouge and Parish of East Baton Rouge's ("Defendants") motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (doc. 7). Louisiana Environmental Action Network ("LEAN" or "Plaintiff") has opposed the motion (doc. 10). Defendants have replied to Plaintiff's opposition (doc. 15), and Plaintiff has filed a sur-reply (doc. 18). On March 16, 2011, the Court heard oral argument on the motion (doc. 26). Jurisdiction is based on 28 U.S.C. § 1331 and 33 U.S.C. §1365.

## BACKGROUND AND FACTS

In 1988, the Government filed a complaint against the City of Baton Rouge and the State of Louisiana alleging violations of the Clean Water Act ("the Act") at three wastewater treatment plants in Baton Rouge (doc. 4, p. 6).[1] The parties

---

[1] The case number is 3:88-cv-00191-JVP.

entered into a modified consent decree to resolve those claims, and to require the wastewater plants, by December 31, 1996, to comply with the effluent standards set by the Act (doc. 1, p. 6; see case no. 88-cv-191-JVP ("88-191"); case no. 01-cv-978-FJP-CN ("01-978") doc. 1, pp. 7-8). In 1997, the parties amended the modified consent decree to provide additional time for defendants to complete construction of one of the plants and to increase stipulated penalties for violations of effluent limitations at that facility (01-978, doc. 1, p. 8).

In 2001, the Government and the State of Louisiana again filed suit against the City of Baton Rouge and the Parish of East Baton Rouge alleging that the same wastewater facilities continued to operate in violation of the Act and of their respective National Pollutant Discharge Elimination System permits ("the permits") (01-978 doc. 1).[2] Thereafter, the parties entered into a new consent decree in 2002 ("the 2002 consent decree")[3] which superseded and terminated the 1988 modified consent decree, and required, *inter alia*, effluent limitations of a 75 percent biochemical oxygen demand ("BOD") and total suspended solids ("TSS") reduction, rather than the 85 percent reduction required by the permits (doc. 4, p. 6).[4] The 2002 consent decree also included language permitting the court to retain jurisdiction over the case after entry of the consent decree:

---

[2] See 01-978, doc. 1, pp. 7-8.

[3] The Honorable Frank J. Polozola signed the 2002 consent decree on March 15, 2002.

[4] "A standard condition in permits issued to publicly owned treatment works requires that the permit holder reduce the amount of Biochemical Oxygen Demand ("BOD") and Total Suspended Solids ("TSS") such that the thirty day average amount of BOD and TSS in the

2

> This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court.

(01-978 doc. 11, p. 44, ¶ 89). The 2002 consent decree was modified in 2008 "to amend a previously approved work plan so that Defendants can implement revisions to the workplan [sic] which all Parties agree are beneficial and consistent with the objectives of the 2002 Consent Decree." (01-978 Doc. 15, p. 1). The modifications were approved and entered by the Court in 2009 (doc. 7-1, p. 3). Defendants assert they are in "compliance in all respects" with the 2002 consent decree (doc. 7-1, p. 10).

Plaintiff[5], a non-profit community organization, alleges that Defendants are presently in violation of the Act and the 2002 consent decree because of ongoing permit violations at the same three sewage treatment plants in Baton Rouge (doc. 4, p. 1, 2).

---

wastewater discharge from the plant is at least eight-five percent (85%) less than the amount of BOD and TSS in the sewage entering into the plant. 40 C.F.R. § 133.102. This requirement is commonly known as the Eighty-Five Percent Rule." (Doc. 4, pp. 5-6).

[5] LEAN describes its organization as: "an umbrella organization for several environmental and citizen groups in Louisiana and also has individual members. LEAN has more than 1,700 individual members, some of whom reside, own property, work, and recreate in areas near and downstream of Defendants' plants in Baton Rouge and East Baton Rouge Parish. LEAN's purpose is to preserve and protect Louisiana's land, air, water, and other natural resources. LEAN seeks to protect its members from threats of pollution, including harmful discharges, overflows, and odors from Defendants' wastewater treatment plants. This lawsuit is germane to LEAN's purpose." (Doc. 4, p. 3).

In their motion to dismiss, Defendants assert that the 2002 consent decree was approved by the court to allow Defendants to undertake an extensive Remedial Measure Action Plan and would permit Defendants to come into compliance with the Act no later than January of 2015; and, therefore, Plaintiff's citizen suit is barred pursuant to 33 U.S.C. § 1365(b)(1)(B) (doc. 7, p. 1; doc. 7-1, pp. 2-3).[6] Defendants assert that Plaintiff's claims pertain to violations that require compliance with the same standards that are the subject of the 2002 consent decree (doc. 7-1, p. 5).[7] Defendants further assert that, as such, Plaintiff is attempting to hold Defendants to the 85 percent rule as opposed to the 75 percent average allowed by the 2002 consent decree (doc. 7-1, p. 5).[8]

---

[6] Title 33 U.S.C. § 1365(b)(1)(B) provides that a citizen suit is barred if the EPA or state "has commenced and is diligently prosecuting a civil action...to require compliance with the standard, limitation, or order."

[7] Defendants allege that:
> Since entering into the Consent Decree, the City-Parish has completed all of the required First Remedial Action Plan measures and has begun the planning and construction of the Second Remedial Action Plan measures. During the calendar year 2010, the City-Parish plans to let design and construction projects pursuant to the Second Remedial Action Plan in excess of $400 million with a like amount to be let in 2011.

(Doc. 7-1, p. 1).

[8] Defendants allege that:
> One of the objectives of the Consent Decree is to require the "City/Parish to achieve and maintain compliance with its NPDES permit and the Clean Water Act." In furtherance of that objective, the City-Parish is required to implement specific remedial measures. These measures are designed to bring the City-Parish into compliance with the Eighty-Five Percent Rule and eliminate sanitary sewer overflows. Additionally, the City-Parish is subject to stipulated penalties for certain violations of the terms of the Consent Decree and NPDES permits. The liability for violations is limited in the Consent Decree to failure to comply with an "interim effluent limitation" as opposed to the Eight-Five Percent Rule.

(Doc. 7-1, pp. 3-4).

Additionally, Defendants assert that the 2002 "Consent Decree and the administration of compliance with the Consent Decree are part of EPA and LDEQ's diligent prosecution" of Defendants for violations of the Act (*Id*). Defendants argue that Plaintiff's claim should be dismissed because the EPA is actively prosecuting its own enforcement action (doc. 7-1, p. 5).

## ANALYSIS

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The Court must construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Id*.

## Citizen Suits Pursuant to § 1365(b)(1)(B)

Defendants argue that this action should be dismissed pursuant to 33 U.S.C. § 1365(b)(1)(B), the citizen suit provision of the Act, as an "action is prohibited if the Administrator of the EPA is 'diligently prosecuting a civil or criminal action. . .to require compliance with the standard, limitation, or order.'" (Doc. 7-1, p. 5). The Act strips courts of subject matter jurisdiction over citizen suits once the EPA has timely commenced judicial or administrative enforcement actions. 33 U.S.C. § 1365(b)(1)(B), 1319(g).

"The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it permits citizens to abate pollution when the government cannot or will not command compliance." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008). The Senate Report for the Act notes that "[t]he Environmental Protection Agency and the State should actively seek, encourage and assist the involvement and participation of the public in the process of setting water quality requirements and in their subsequent implementation and enforcement." S. Rep. 92-414. "Thus, the primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act." *See also Lockett v. Envtl. Prot. Agency*, 319 F.3d 678, 684 (5th Cir. 2003). Congress' intent to confer the right upon citizens to institute litigation alleging illegal discharges of pollutants reflects its understanding that governmental agencies, which are charged with the primary responsibility, may

not be able to adequately enforce the laws prohibiting such pollution. S. Rep. 92-414. As such, and in accordance with 33 U.S.C. § 1365, citizens can effectually demand action.

However, the Supreme Court has held that "the citizen suit is meant to supplement rather than to supplant governmental action," and is appropriate only when government agencies fail to exercise their enforcement responsibilities. *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); See also *Lockett*, at 684. As Congress did not intend for citizen suits to be "potentially intrusive" on agency discretion, citizen suits under the Act have an "interstitial role." *Id.*, at 61. As the Tenth Circuit noted in *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007), "citizen-plaintiffs must meet a high standard to demonstrate that [the governmental agency] has failed to prosecute a violation diligently."

In *Karr v. Hefner*, 475 F.3d 1192, 1196 (10th Cir. 2007), the United States Court of Appeals for the Tenth Circuit reviewed the meaning of "diligently prosecuting" under § 1365(b)(1)(B). The *Karr* court held that the EPA's investigation and prior entry of a consent decree qualified as diligent prosecution, and affirmed the lower court's dismissal of the plaintiff's citizen-suit. *Id.* at 1194, 96. The *Karr* court noted that:

> [P]articularly when the EPA chooses to enforce the CWA through a consent decree, failure to defer to its judgment can undermine agency strategy. If a defendant is exposed to a citizen suit whenever the EPA grants it a concession, defendants will have little incentive to negotiate consent decrees.

*Id.* The *Karr* court further recognized that:

> Section 1365(b)(1)(B) does not require government prosecution to be far-reaching or zealous. It requires only diligence. Nor must an agency's prosecutorial strategy coincide with that of the citizen-plaintiff. As expressed by the Sixth Circuit, "[S]econd-guessing of the EPA's assessment of an appropriate remedy ... fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir.2004); *see N. & S. Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 558 (1st Cir.1991) ("Merely because the State may not be taking the precise action Appellant wants it to or moving with the alacrity Appellant desires does not entitle Appellant to injunctive relief.").

*Karr*, 475 F.3d at 1197.

The Eighth and Eleventh Circuit Courts of Appeals have noted that most courts that have addressed the issue of commencement of diligent prosecution "have concluded that issuance of an administrative consent order would satisfy the 'commencement' requirement." *McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 n. 6 (11th Cir. 2003) *citing Ark. Wildlife Fed'n v. ICI Americas, Inc.*, 29 F.3d 376, 379-80 (8th Cir. 1994).

8

## Mootness Analysis

The Fifth Circuit has held that "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008). There are two standards which courts apply to determine whether a case brought pursuant to the Act is moot. In the case of the parties entering into a voluntary agreement with a regulatory agency, the party asserting mootness must show that the alleged violations cannot reasonably be expected to recur. *Id.* at 528. In the case of compliance being compelled by an enforcement action, the party denying mootness must show that there is a realistic prospect that the alleged violations will continue despite the action. *Id.* The second standard applies to this case, and, therefore, Plaintiff would have to show that there is a realistic prospect that Defendants' alleged violations are continuing despite their ongoing duty to comply with the consent decree.

The Fifth Circuit explained the second standard of the mootness analysis in *City of Dallas*, holding that a consent decree properly entered into by the EPA and the City of Dallas to address alleged violations of the Clean Water Act mooted a pre-existing citizen suit filed subsequently for the same purposes. *Id.*[9]

---

[9] See also *Chesapeake Bay Found. v. Am. Recovery Co., Inc.*, 769 F.2d 207 (4th Cir. 1985) (Holding that an environmental group was not barred from the right to file an independent action and the right to intervene in a government enforcement suit to enforce the Act, but the existence of a subsequent consent decree between the government and the offending defendant effectively mooted plaintiff's suit.).

Although not exactly analogous,[10] this Court will apply the standard enunciated in *City of Dallas*, as Plaintiff has sued to compel Defendants' compliance with both the consent decree and the Act.

In their pleadings and before this Court at the hearing on the motion, Defendants asserted that they are in full compliance with the 2002 consent decree, and are on schedule to complete massive updates and improvements to the three wastewater treatment plants by January, 2015 (in accordance with the 2002 consent decree). Defendants allege that these improvements address and resolve Plaintiff's grievances, thereby rendering the Plaintiff's claims moot.

Accordingly, although the Court is sensitive to Plaintiff's position, it is unable to provide the relief requested in the complaint. Prior to the January 2015 compliance deadline set by the 2002 consent decree, no remedy is available to Plaintiff absent a finding of non-compliance by the Court having proper jurisdiction to enforce the decree.[11]

---

[10] The *City of Dallas* citizen-suit was filed prior to the entry of the consent decree.

[11] The massive and costly overhaul of Baton Rouge's sewer system and wastewater treatment facilities will not occur overnight. If Plaintiff is correct in its assertion that Defendants are not complying with the 2002 consent decree, the Court encourages Plaintiff to take up the matter up with the EPA, as the EPA has the power to enforce the consent decree.

The Court notes that the EPA has not been silent in regard to this action. Both parties attached written correspondence from the EPA to the documents filed before this Court. A letter dated May 28, 2010 from the United States department of Justice Environment and Natural Resources Division on behalf of the EPA to Defendants stated:

> [W]e recognize the efforts of Baton Rouge under the 2002 Consent Decree. Since entry of the 2002 Consent Decree, Baton Rouge has undertaken construction work which is estimates will cost over $1.2 billion. We look forward to the completion of that construction and the achievement of compliance with the Clean Water Act.

(doc. 15, p. 15).

Accordingly, after having considered the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief, and must grant Defendants' motion to dismiss.

**<u>Attorney's Fees</u>**

Defendants have requested reasonable costs of litigation pursuant to 33 U.S.C. § 1365(d), which, in relevant part provides:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

The Court finds an award of costs would be inappropriate in this case. Accordingly, Defendants' request for litigation costs is hereby **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (doc. 7) is hereby **GRANTED**, and this action shall be dismissed.

Baton Rouge, Louisiana, May 16, 2011.

                                          _____
                                          BRIAN A. JACKSON
                                          UNITED STATES DISTRICT JUDGE
                                          MIDDLE DISTRICT OF LOUISIANA