# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA ENVIRONMENTAL ACTION NETWORK, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **CITY OF BATON ROUGE, ET AL.** | **NO.: 10-00187-BAJ-SCR** |

## ORDER

Before the Court is a **Joint Motion to Lodge Consent Decree and for Entry of the Consent Decree After this Court Receives a Statement of the United States Position (Doc. 44)**, filed by Plaintiff Louisiana Environmental Action Network and proposed Intervenor Concerned Citizens of University Place Subdivision, and Defendants City of Baton Rouge and Parish of East Baton Rouge, seeking an order from this Court entering into the record a Consent Decree, agreed upon and entered into by all parties in this matter and proposed Intervenor Concerned Citizens of University Place Subdivision.

The Court has reviewed the proposed Consent Decree, and finds it to be a fair and reasonable settlement of this matter. Further, on February 11, 2013, the United States Department of Justice, Environmental Natural Resources Division submitted a letter to this Court stating that it reviewed the proposed Consent Decree, and it does not object to the entry of the Consent Decree into the record of this matter.

Accordingly,

**IT IS ORDERED** that the parties' **Joint Motion to Lodge Consent Decree and for Entry of the Consent Decree After this Court Receives a Statement of the United States Position (Doc. 44)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the **Consent Decree**, which is attached to this order, including Exhibits A, B & C, is hereby incorporated by reference, adopted, and made an Order of this Court.

Baton Rouge, Louisiana, this 19th day of March 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK, | ) ) | 3:10-cv-00187-BAJ-SCR |
| Plaintiff, | ) ) ) | Judge: Brian A. Jackson |
| v. | ) ) | Magistrate Judge: Stephen C. Reidlinger |
| CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE, | ) ) ) | |
| Defendants. | ) ) | |

## CONSENT DECREE

### Recitals

WHEREAS Defendants City of Baton Rouge and Parish of East Baton Rouge (collectively "Baton Rouge") own and operate the North Wastewater Treatment Plant located at 55 Mills Avenue in East Baton Rouge Parish;

WHEREAS on March 22, 2010, Plaintiff Louisiana Environmental Action Network filed this lawsuit and the Concerned Citizens of University Place Subdivision moved to intervene as a Plaintiff contemporaneously with the filing of this proposed Consent Decree;

WHEREAS the Plaintiffs allege that Baton Rouge is in violation of the federal Clean Water Act and that Baton Rouge is liable for civil penalties and injunctive relief;

WHEREAS all parties agree to settle this action along the lines set forth in this [proposed] Consent Decree and, in the event that the Court does not enter the [proposed] Consent Decree in the form of the proposal, and to the extent not inconsistent with any orders that the Court may issue, the parties agree to take all such further acts and execute all such further documents as may

reasonably be required to give effect to the terms of their agreement as set forth in this [proposed] Consent Decree;

WHEREAS the parties agree and stipulate that their contract and agreement underlying this [proposed] Consent Decree is intended to inure to the benefit of and be enforceable by the following third-party beneficiaries: Owners of real property acquired under the buffer project described in Exhibits A-B and below, or persons displaced as a result of said real property acquisition;

WHEREAS the Parties wish to resolve this lawsuit cooperatively, without admission of liability and without further litigation, and for that reason make mutual commitments and request that the Court enter this Consent Decree;

## Consent Decree

NOW THEREFORE, the Parties agree and the Court hereby ORDERS as follows:

### Jurisdiction and Applicability

1. This Court has jurisdiction over the Parties and the subject matter of this action.

2. This Consent Decree is binding upon the Plaintiffs and the Defendants.

3. Each party promises that the person or persons who sign this Consent Decree on its behalf are authorized to execute this Consent Decree and to bind that party to its terms.

### Effective Date and Contingency

4. The effective date for the obligations that this Consent Decree creates in paragraphs 10 through 16 shall be the date, if any, that this Court approves a joint Baton Rouge, United States, and State of Louisiana motion for a modification of the 2001 Consent Decree in Case No. 01-978 which provides for an extension of Baton Rouge's final deadline for full compliance with that Consent Decree in Case No. 01-978 by four years.

5.     If the parties to Case No. 01-978 decline to submit the joint motion for a modification of the 2001 Consent Decree referred to in paragraph 4, above, within 250 days of the date of the parties' submission of the instant Consent Decree, the obligations that this Consent Decree creates in paragraphs 10 through 16 shall be null and void.

6.     If this Court declines to grant the motion for a modification of the 2001 Consent Decree in Case No. 01-978 referred to in paragraph 4, above, the obligations that this Consent Decree creates in paragraphs 10 through 16 shall be null and void.

## Stay Pending Resolution of Contingency

7.     This lawsuit is stayed until the effective date of this Consent Decree (as provided in paragraph 4) or until one of the events described in paragraphs 5 or 6 occurs.

## Commitments and Obligations

8.     Within 10 days of this Court's entry of this Consent Decree, the Plaintiffs shall (1) withdraw their intervention in United States v. City of Baton Rouge, No. 01-978, (2) withdraw the comments that the Tulane Environmental Law Clinic submitted on the Plaintiffs' behalf on March 2, 2012 in response to the Notice of Lodging of Second Agreement and Order Regarding Modification of the Consent Decree Under the Clean Water Act, announced in 77 Fed. Reg. 4060 (Jan. 26, 2012).

9.     Plaintiffs shall not oppose (whether administratively or in court) the extension of compliance deadlines of the 2001 Consent Decree in Case No. 01-978 contemplated by paragraph 4, above.

10.     Baton Rouge shall begin, carry out, and complete the Buffer Project described in Baton Rouge's September 9, 2011 letter to EPA (Re: City of Baton Rouge and Parish of East Baton Rouge Consent Decree-Civil Action No. 01-978-B-M3 Public Project - Buffer for the North

Wastewater Treatment Plant) (attached as Exhibit A), as that proposal is clarified and modified by this Consent Decree. Baton Rouge shall begin the process needed to acquire the property needed for the public project within 60 days of the effective date of this Consent Decree. After beginning the project, Baton Rouge shall proceed diligently to carry out and complete the project within a reasonable time. Baton Rouge shall complete the project within eighteen months of the effective date of this Consent Decree.

11.     Where the Buffer Project contemplates acquisition of real property and/or the relocation of residents, the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 et seq. and 49 C.F.R. pt. 24 as amended, shall be applicable to and binding on the relocation process and on Baton Rouge to the same extent that such Act would be binding if Baton Rouge were receiving federal funding assistance for the project. People affected by determinations and decisions under the Act, after exhaustion of all administrative remedies, shall be entitled to judicial review of all such determinations and decisions. The standard of review for judicial review of relocation packages shall be the "preponderance of the evidence" standard. Baton Rouge shall not use quick taking procedure in association with implementation of the Buffer Project except with respect to properties for which all property owners agree to the use of quick taking procedure.   ("Quick taking procedure" is described in *City of Baton Rouge v. Johnca Properties L.L.C.*, 2000-2524 (La. 6/1/01), 794 So.2d 766).

12.     For the purposes of this Consent Decree, the phrase "decent, safe, and sanitary dwelling" as defined in 49 C.F.R. § 24.2(a)(8) shall include "the dwelling must contain a functioning air conditioning system."

13.     For the purposes of this Consent Decree, the phrase "the project for which the property is to be acquired" in 49 C.F.R. § 24.103(b) shall include, but shall not be limited to Baton

Rouge's North Wastewater Treatment Plant, including without limitation the environmental effects of that plant.

14.     The Public Project - Buffer for the North Wastewater Treatment Plant shall be modified as follows: The properties to be relocated shall include, at minimum, the area within the borders described on Exhibit B and also described as follows:

> All of the property within a contiguous parcel formed by starting at the intersection of Mills Avenue and Avenue M, thence proceed east along Mills Avenue to Avenue K, thence proceed north along Avenue K to Woodpecker Street, thence proceed west to Avenue L, thence proceed north along Avenue L to the northern property line of 10183 Avenue L (Lot 34, Highland Farms Subdivision) thence proceed west along the northern boundary of said lot and the northern boundary of 10196 Avenue M (Lot 15-A, Highland Farms Subdivision) to its intersection with Avenue M, thence proceed south along Avenue M to its intersection with Mills Avenue.

15.     Baton Rouge shall implement and complete the North Wastewater Treatment Plant Master Plan projects referenced in Baton Rouge's July 30, 2012 letter to EPA (Re: City of Baton Rouge and Parish of East Baton Rouge Consent Decree-Civil Action No. 01-978-B-M3 Modified Request for Time Extension/Modification of the Compliance Schedule in the Approved RMAP2 Submittal, Attachment 2) (Exhibit C). Baton Rouge shall provide a reasonably detailed schedule for implementation and completion of the projects within 90 days following the effective date of this Consent Decree and shall file a certification with this Court when the projects are completed.

16.     Baton Rouge shall implement and complete the North Wastewater Treatment Plant Odor Control project referenced in Exhibit C. Baton Rouge shall provide a reasonably detailed schedule for implementation and completion of the project within 90 days following the effective date of this Consent Decree and shall file a certification with this Court when the project is completed.

## Intervention Granted

17.     The Concerned Citizens of University Place Subdivision's Motion to Intervene as a Plaintiff (filed contemporaneously with the proposed Consent Decree) is granted.

## Dismissal and Contingency

18.     Upon the effective date set forth in paragraph 4 above, this case shall be dismissed, provided that this Court shall maintain jurisdiction over this matter for the purpose of implementing and enforcing this Consent Judgment. If, pursuant to paragraphs 5 or 6 above, the effective date does not occur, this Consent Decree does not provide for dismissal.

Agreed to:

**CONCERNED CITIZENS OF UNIVERSITY PLACE SUBDIVISION**

_____
Gregory R. Mitchell.
President, Concerned Citizens of
University Place Subdivision
Post Office Box 74054
Baton Rouge, Louisiana 70807

Date: 1/31/13

**LOUISIANA ENVIRONMENTAL ACTION NETWORK**

_____
Marylee Orr, Executive Director
P.O. Box 66323
Baton Rouge, LA 70896

Date: 1 31 13

**CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE**

_____
MARY E. ROPER, PARISH ATTORNEY
Robert H. Abbott III, La. Bar No. 02278
Sr. Special Assistant Parish Attorney
222 St. Louis Street, Room 902
Post Office Box 1471
Baton Rouge, Louisiana 70821
Phone: (225) 389-3114
Fax: (225) 389-5554

Date: 2/4/13

TULANE ENVIRONMENTAL
LAW CLINIC

Adam Babich, La. Bar No. 27177
6329 Freret Street
New Orleans, LA 70118-6321
Phone: (504) 862-8800 // Fax: (504)
862-8721
*Counsel for Plaintiff Louisiana
Environmental Action Network and
[proposed] Intervenor Concerned
Citizens of University Place Subdivision*

Date: _1-31-13_

# Exhibit A
# Baton Rouge's September 9, 2011 letter to EPA

(RE: City of Baton Rouge and Parish of East baton Rouge Consent Decree Civil Action
No. 01-978-B-M3 Public Project – Buffer for the North Wastewater Treatment Plant)



**Department of Public Works**

City of Baton Rouge
Parish of East Baton Rouge

Post Office Box 1471
Baton Rouge, La 70821

September 9, 2011

<u>**CERTIFIED – RETURN RECEIPT REQUESTED**</u>

Regional Counsel,
Water Enforcement Branch (6EN-W)
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region VI
1445 Ross Avenue
Dallas, Texas 75202-2733

Re: City of Baton Rouge and Parish of East Baton Rouge
Consent Decree-Civil Action No. 01-978-B-M3
Public Project – Buffer for the North Wastewater Treatment Plant

Ms. Murray:

The City of Baton Rouge and Parish of East Baton Rouge (City/Parish) hereby submits a proposed public project to create a buffer zone between the North Wastewater Treatment Plant (NWWTP) and the adjacent residential neighborhood within the boundary area as defined herein. The City/Parish will acquire the properties in **Attachment 2** to accomplish this objective. This project is not currently a requirement of the Consent Decree (2001) or Consent Decree Amendment (2009) and is not funded as such. The proposed public project presents a logical and reasonable method for determining where to draw a "boundary", or "buffer" line surrounding the NWWTP facilities. The plan takes into account the future odor impacts to homeowners in the area based on the City/Parish's *Wastewater Master Plan 2008 (Odor Study)*.

The rest of this memo highlights the proposed public project, an overview of the NWWTP Odor Study which was used as a basis for justifying the buffer lines, and the history of odor control improvements made and planned at the NWWTP.

<u>**Proposed Public Project**</u>

The City/Parish's proposed public project area is depicted in **Attachment 1**. The individual property details are shown in **Attachment 2**. The City/Parish feels this proposal meets the definition of a public project as set forth in the opinion of the Louisiana State Attorney General's Office; see **Attachment 4** for more details. The City/Parish is proposing a minimum 300 foot buffer adjacent to the existing facility which is shown as a yellow border on the map. The justification behind the buffer border of 300 feet, or more, is primarily based on results from the *Odor Study* as follows:

- It covers the City/Parish selected 99.9% target that achieves a 10 dilutions/threshold (D/T) limit once corrective actions are taken (*Wastewater Master Plan 2008 – Odor Study*).
    - o Note - a brief summary of the *Odor Study* and results used as the basis of the public project are included in a section below.

The 300 foot buffer should also provide enough distance away from the NWWTP in order to provide for an area dedicated and maintained as an open space and may include green space, cultivation, nature preserve or other uses consistent with buffer zones. The buffer zone shall meet or exceed the landscape standards as defined by the City/Parish Unified Development Code (UDC). This buffer is also an easy distance to visualize since it is the width of a nominal local city block, and is also the length of a football field.

Additionally, the city blocks numbered 1, 2, and 3 on the maps are those specific properties included in the buffer zone. All of those properties identified in **Attachment 2** not already owned by the City/Parish would be included in the proposed public project. Note that the City/Parish, through previous buy-out attempts, owns all properties that are hashed as shown on **Attachment 2**. The numbered city blocks on the maps correspond directly to city blocks 1, 2, and 3 in Table 1 depicted in **Attachment 2** which list the specific property details proposed in the public project.

The criteria to be used to value the properties and relocate the residents will be consistent with other public projects executed by the City/Parish and allowed by Louisiana law.

As shown on the maps, this proposed public project focuses on the acquisition of property (primarily residential) immediately East of the WWTP. Note that there may be some additional property that may need to be acquired in the future to provide the additional buffer shown on the maps around all sides of the NWWTP.

## Odor Control Study Overview and Boundary Justification

As previously mentioned, an *Odor Study* was done as a part of the City/Parish's *Wastewater Master Plan* voluntarily undertaken by the City/Parish in 2007 and completed in 2008. The study evaluated odor sources and provided odor mitigation recommendations for all three wastewater treatment plant facilities that are owned and operated by the City/Parish. It consisted of an initial odor source characterization evaluation based on field sampling, dispersion modeling (Industrial Source Complex Terrain Model Version 3 – EPA approved) to identify high-priority odor sources, and a technology evaluation with recommendations for corrective measures for those high-priority sources at each WWTP facility.

The study projected odor risk by plotting the number of times the offsite odor threshold target (10 D/T) was exceeded with all sources acting together at each facility. The City/Parish had a goal to reduce odors to an acceptable level (target below 10 D/T) 99.9% of the time (note that since there aren't any permitted requirements, or local or state regulations that support a target goal, the City/Parish set this self-imposed goal in order to reduce the risk of odor impacts). The resulting model output indicated locations, if any, where the offsite impact targets were not met.

> o D/T Definition = Dilutions to threshold limit, is an estimate of the number of times an odor is diluted until ½ of a trained odor panel can't smell it.

Basically, the figures in **Attachment 3** were used to help identify the "buffer" line proposed in the public project on maps shown in **Attachments 1 and 2**. The top figure depicts the odor model results generated in 2007/2008, before any odor control improvements were made at the NWWTP facility. As you can see from that top figure, there were 450 hourly odor exceedances of 10 D/T predicted to occur from the model in the area immediately surrounding the NWWTP, which corresponds to approximately 95% target.

Before Corrective Measures Calculation
1 year = 8,760 hours
450 hours/8,760 = 5%

100% - 5% = 95% target, therefore 99.9% goal not met

The bottom figure shows the modeled odor impacts (i.e. reduced odor frequency) once all of the odor control corrective measures/recommendations are implemented at the NWWTP. There are just 9 hourly odor exceedances of 10 D/T predicted to occur in the area surrounding the NWWTP which corresponds to over 99.9% exceedance and meets or exceeds the City/Parish's goal. What this means is that once all of the odor improvements are made at the NWWTP, there should be a greatly reduced odor impact frequency in the area and a much lower risk of significant odor events that have occurred in past years.

> <u>After Corrective Measures Calculation</u>
> 1 year = 8,760 hours
> 9 hours/8,760 = 0.1%
> 100% - 0.1% = 99.9% target, therefore 99.9% goal achieved

The City/Parish conservatively assumed that the "buffer" zone would encompass the 3 city blocks in the bottom figure of **Attachment 3** where there are just 9 hourly odor exceedances of 10 D/T shown once all plant odor control improvements are made.

## NWWTP Historical, On-going, and Proposed Odor Improvements

The City/Parish is committed to improving odors that affect the neighborhood near the NWWTP and has spent, and plans to spend, millions of dollars to achieve the odor control target identified in the odor studies. Additionally, the City/Parish has spent significant time, money, and effort on attempting to buy-out the residents surrounding the NWWTP dating back since 1996.

The bulleted list below highlights the significant investment that the City/Parish has made, and plans to make, at the NWWTP regarding odor control improvements in the neighborhood surrounding the NWWTP. These efforts at the NWWTP go above and beyond anything that has been required by Louisiana and EPA Region 6. A quick timeline shows the odor improvements implemented, underway, and planned at the NWWTP:

- **1996** – *Mitchell Litigation* (case including residents surrounding the NWWTP) began. The City/Parish has made repeated attempts throughout this case to purchase many of the properties surrounding the NWWTP, see **Attachment 5** for more details. As you can see from the map in **Attachment 2**, several properties were able to be purchased in this manner. However, not all property owners agreed to the settlement offers and have continued to appeal the case to the highest levels of Louisiana State Court. This case has been on-going for over 14 years including appeals, etc. The ruling of this case was made in the City/Parish's favor and was made final in 2010.

- **2007/2008** – The City/Parish voluntarily developed a *Wastewater Master Plan* which consisted of an assessment of the North, South, and Central wastewater treatment plants and collection systems in order to plan for future flows/loads and future regulatory requirements through the year 2032. One portion of this included a *Wastewater Treatment Plant Odor Control Analysis (Odor Study)* which resulted in recommended odor improvements for the wastewater treatment plants that were intended to be included as a part of the scope of the master plan projects implemented once the Consent Decree required work was completed. The *Wastewater Master Plan* identified over identified over $37 million dollars worth of improvements to be implemented at the North WWTP at the time of publication. Since that time, additional odor control items have been identified for improvement. Therefore, the estimated total cost (design and construction) of the North WWTP Master Plan Improvements project is currently estimated to be approximately $55.1

million dollars. This project is currently scheduled in 2015 and beyond (unless the extension request is granted as submitted). The project includes the following:

- Comprehensive odor control - $24.1 million
- New raw sewage pumping station - $2.4 million
- New preliminary treatment - $7.1 million
- Plant SCADA system - $2.5 million
- Replace gaseous chlorine with sodium hypochlorite - $2.8 million
- General plant rehabilitation (electrical, mechanical, structural) - $8.4 million
- Standby electrical generators - $5.9 million
- Sludge digestion rehabilitation with gas utilization - $1.9 million

- **2007** –*NWWTP Odor Control Facility Project* began. This project was designed to minimize odors from the preliminary treatment process *and raw* sewage pump station. The design included some recommendations which were made as a result of the *Odor Study* completed around the same time. The project included two biotowers at the NWWTP and chemical feed systems at 5 remote pump stations in the NWWTP basin. The City/Parish spent over $3.5 million dollars on the design and construction of this project. The chemical feed systems were completed in November 2009, and the biotowers were completed in November 2010.

- **April 2011 to Present** – The City/Parish is implementing the *NWWTP Interim Rehabilitation and Odor Control Project*, which is estimated to cost an additional $2.3 million dollars, and is scheduled to be completed by 4th quarter 2011. The project includes many improvements to the operation of the NWWTP, and specific odor improvements/refinements related to the following:

    - Contracted with WWTP O&M experts to help refine standard operating procedures (SOPs), improve process operation of the plant (including new biotower odor control units), in addition to training staff on the updated procedures, etc. – work still in progress
    - Rehab odor control for solids handling system
    - Identified ways to maximize grease, grit, and solids removal
    - Implement an improved trickling filter flushing program to reduce/minimize filter flies
    - Develop and implement major plant maintenance plan

Already, as a result of this project the new biotowers have been proven to be operating effectively in the removal of H2S (Hydrogen Sulfide) gases. These units have consistently removed approximately 98% of the odorous air through biological interactions during the past three (3) months.

- **January 2012 - December 2016** – Implement *NWWTP Master Plan Improvements* project, (contingent upon approval of the 3 year extension request).

    - Comprehensive odor control - $24.1 million (beyond recommendations identified in the *Odor Study*)

The City/Parish has put together a number of attachments listed below, which are also included with this submittal for the benefit of the EPA and all parties in order to help ensure a timely implementation of the proposal linked to the consent decree extension as proposed.

The City/Parish believes this public project can be formalized, implemented, and completed in approximately 18 months, starting from the date of the approval of the Consent Decree extension.

The City/Parish does not have funds to initiate this public project, and can't reiterate enough the importance of getting approval of the extension and updated compliance schedules. The extension allows the City/Parish to reallocate resource and move this project forward. We need to resolve these issues at the soonest possible date, in order for the schedule adjustments to have the desired benefits.

**Summary of Attachments**

**1 – North Plant Project Vicinity Map: Proposed Public Project**

**2 – Proposed Public Project Map and Table 1 (list of the Lot ID details corresponding to the maps)**

**3 – Comparison of NWWTP Odor Impacts Before and After the NWWTP Corrective Measures**

**4 – State of Louisiana Letter Approving Buffer Zone Declaration Surrounding the North WWTP**

**5 - History of NWWTP Residential Buy-Out and Lawsuit Timeline**

Sincerely,

s/William B. Daniel, IV
Acting Director of Public Works

Cc:    Honorable Melvin L. "Kip" Holden, Mayor-President
       Mr. John Carpenter, Chief Administrative Officer
       Ms. Suzanne Murray, US EPA (6RC)
       Mr. Mary Roper, Parish Attorney
       Mr. Bob Abbott, Parish Attorney's Office
       Mr. Bryan Harmon, DPW
       Mr. Jim Ferguson, DPW
       Mr. Mark LeBlanc, DPW
       Mr. David Guillory, DPW
       Mr. Michael Ellis, CH2M HILL
       Mr. Jim Hawley, CH2M HILL
       Mr. Gordon Garner, CH2M HILL
       Ms. Karen Johnson, CH2M HILL

# Attachment 1 North Plant Project Vicinity Map: Proposed Public Project



Buffer ( minimum 300 ft)

Existing Facility Area

1

2        3

Woodcock St

James L Hunt St

Mills Ave

Additional Buffer (50 ft)



East Baton Rouge Parish

Legend

**Legend**

N

Existing Facility Area

Buffer (Minimum 300 ft)

0      146      292

Feet



**Attachment 1
North Plant Project
Vicinity Map**

CITY OF BATON ROUGE

PUBLIC WORKS

# Attachment 2 Proposed Public Project Map & Table 1

COPYRIGHT 2011 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

NWWTP

Block 1

Block 3

Block 2

| | |
|---|---|
| 1 | 40 |
| 2 | 39 |
| 3 | 38 |
| 4 | 37 |
| 5 | 36 |
| 6 | 35 |
| 4-A | 34 |
| 9 | 16-A |
| 10 | |
| 6-A | 15-A |
| 13 | 28 |
| 14 | 27 |
| 8-A | 13-A |
| 8-A | 12-A |
| 10-A | 22 |
| | 21 |

| | |
|---|---|
| 1 | 40 |
| 2-A | 39 |
| 4-A | 38 |
| 6-A | 37 |
| | 36 |
| UND | 35 |
| | 34 |
| | 33 |
| | 32 |
| | 31 |
| 11 | 30 |
| 12-A | 29 |
| 14-A | 28 |
| | 27 |
| 16-A | 26 |
| 18-A | 25 |
| | 24 |
| 20-A | 23-A |
| | 21-A |

| | |
|---|---|
| 1 | 40 |
| 2 | 39 |
| 3 | 38 |
| 4 | 37-A |
| 5 | 35-A |
| 6-A | 34-A |
| 8-A | 32-A |
| 9-A | 31-A |
| 11-A | 29-A |
| 12-A | 28-A |
| 14-A | 26-A |
| 15-A | 25 |
| 17-A | 24 |
| 18-A | 23 |
| 20-A | 22 |
| | 21 |



East Baton Rouge Parish



### Legend

Lot ID's

| Block 1 | Block 2 | Block 3 | City/Parish Owned |
|---|---|---|---|
| Block Group 28 | Block Group 27 | Block Group 26 | |

0    0.0375    0.075
Miles



**Attachment 2**
**Proposed**
**NWWTP Project**

Baton Rouge SSO Program

# Attachment 2 – Table 1

This attachment lists the specific details of the properties included in the proposed NWWTP public project. Additionally, the city blocks numbered 1, 2, and 3 on the maps are listed in the proposed buy-out plan below. The table lists the following information about the property: the randomly selected buy-out number (total properties included = 47), property address, the lot number, and the owner's name. Note that there are several properties already owned by the City/Parish located within each city block that are not listed in the tables below.

## Table 1 Blocks 1, 2, and 3 Proposed Public Project Buy-Out Plan

| Buy-Out Number (Random) | Address (GIS) | Map Lot Number (GIS) | Owner's Name (GIS) |
|---|---|---|---|
| Block 1 | | | |
| 1 | 10092 Avenue M | 1 & 2 | Willie Dunn, et al |
| 2 | 10074 Avenue M | 3 & 4 | Juanita Bush Burton |
| 3 | 10046 Avenue M | 5 & 6 | Leo Banks, et al |
| 4 | 9958 Avenue M | 13 & 14 | Mamie Lee Mitchell |
| 5 | 10097 Avenue M | 39 & 40 | Jesse Ernest White |
| 6 | 10073 Avenue L | 37 & 38 | Martha Hills Scott |
| 7 | V Avenue L | 36 | Timothy Carter |
| 8 | 10015 Avenue L | 16-A | Frances L. Hollins |
| 9 | 9987 Avenue L | 15-A | Wollean Brock Francis |
| 10 | 9967 Avenue L | 27 & 28 | Chase Home Finance, LLC |
| 11 | 9949 Avenue L | 13-A | Johnnie Y. Johnson |
| 12 | 9935 Avenue L | 12-A | Lizzie Lee Clark |
| 13 | 9925 Avenue L | 21 & 22 | Joel A. Gordon, Sr. |
| Block 2 | | | |
| 14 | V Avenue L | 1 | Jerry L Johnson |
| 15 | V Avenue M | 2-A, 4-A, & 6-A | Josephine Walker, et al |
| 16 | 9828 Avenue M | 11 & UND | Tom Ed Bell, Jr. |
| 17 | 9760 Avenue M | 12-A & 14-A | Mary H. Smith, et al |
| 18 | 9728 Avenue M | 16-A & 18-A | Curtis J. & Winnie P. Womack |
| 19 | V Avenue M | 20-A | Nathan E. Wilson |
| 20 | V Avenue L | 36-40 | Hazel Fontenot Buggs |
| 21 | V Avenue L | 35 | Wyema Sue Pennington Lee |
| 22 | V Avenue L | 21-A, 23-A, 24, & 25 | Edward C. Buggs, et al |

# Table 1 Blocks 1, 2, and 3 Proposed Public Project Buy-Out Plan

| Buy-Out Number (Random) | Address (GIS) | Map Lot Number (GIS) | Owner's Name (GIS) |
|---|---|---|---|
| | | | |
| | Block 3 | | |
| 23 | V Avenue L | 1 | Mandy Washington |
| 24 | V Avenue L | 2 & 3 | James Newman Williams, et al |
| 25 | 9862 Avenue L | 4 & 5 | Dave Moore, Jr., et al |
| 26 | 9842 Avenue L | 6-A | Shirley Johnson Shropshire |
| 27 | 9824 Avenue L | 8-A | Viancia Phillips Chattman |
| 28 | 9812 Avenue L | 9-A | Rosa Mary Powell |
| 29 | V Avenue L | 11-A | Ory Alvin Jackson, et al |
| 30 | 9764 Avenue L | 12-A | Joyce Augustus Ross |
| 31 | 9758 Avenue L | 14-A | Eligah Brady, et al |
| 32 | 9750 Avenue L | 15-A | Audrey Collins |
| 33 | 9746 Avenue L | 17-A | Irma Lee Collins |
| 34 | 9738 Avenue L | 18-A | Lionel R. Parker, et al |
| 35 | 9726 Avenue L | 20-A | Vallery Thierry, Jr. et al |
| 36 | 9885 Avenue K | 40 | Sidney Hall |
| 37 | 9885 Avenue K | 38 & 39 | Clarence Williams, Sr., et al |
| 38 | 9865 Avenue K | 37-A | Emile Washington |
| 39 | 9845 Avenue K | 35-A | Richard Fisher |
| 40 | 9835 Avenue K | 34-A | Daniel Scott, et al |
| 41 | 98215 Avenue K | 32-A | Willie Woods, Jr., et al |
| 42 | 9805 Avenue K | 31-A | Jackie Knighten Rogers |
| 43 | 9781 Avenue K | 29-A | Anthony Antione Collins |
| 44 | 9771 Avenue K | 28-A | John Willis, Sr., et al |
| 45 | 9751 Avenue K | 26-A | Jimmie Johnson, et al |
| 46 | 9741 Avenue K | 23-25 | Richard L. Williams, et al |
| 47 | 9711 Avenue K | 21 & 22 | Wilson Jones, et al |

*Note that ownership names and addresses will be verified during the formal appraisal process.

COPYRIGHT 2011 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

# Attachment 3 Comparison of NWWTP Odor Impacts Before and After the NWWTP Corrective Measures

## (Odor Study 2007)

**FIGURE 22**
Comparison of North WWTP Odor Imports Before and After Corrective Measures (Number of 10 D/T Odor Exceedances)
*Existing baseline condition using summary 2007 odor emission data*



*Reduced odor impact frequency*



COPYRIGHT 2008 BY CH2M HILL, INC.

# Attachment 4 State of Louisiana Letter Approving Buffer Zone Declaration Surrounding the NWWTP

COPYRIGHT 2011 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL



JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

State of Louisiana
DEPARTMENT OF JUSTICE
P.O. BOX 94005
BATON ROUGE
70804-9005

AUG 10 2011
**OPINION 11-0117**

| | |
|---|---|
| 71-1-B | MUNICIPALITIES – Home Rule Charter |
| 90-A-1 | PUBLIC FUNDS & CONTRACTS |
| 90-A-2 | PUBLIC FUNDS – Loan, Pledge or Grants |
| 92 | PUBLIC WORKS – Sewerage Systems |
| 167-B | UTILITIES - Public |

Mary E. Roper, *Esq.*
Parish Attorney
City of Baton Rouge
Parish of East Baton Rouge
222 St. Louis Street
Baton Rouge, LA 70821

Dear Ms. Roper,

La. Const. Arts. I § 4, VI § 23, VII § 14
La. R.S. 33:1329, 33:1236(20), 33:3981, 33:47 12.10
La Atty. Gen Op. Nos. 90-0289, 06-0011, 07-0050A, 09-0146, 09-0251, 09-0259, 09-0271, 09-0293, 10-0171.

La. Const. Arts. I § 4, and VI § 23 require a declaration of a public purpose prior to a public entity acquiring immovable property next to a public sewer treatment plant to create a "buffer zone". La. Const. Art. VII § 14 requires that a public entity pay fair market value for when purchasing immovable property to avoid gratuitously alienating public funds.

You have requested an opinion of this Office as to whether the Metropolitan Council of the City of Baton Rouge and the Parish of East Baton Rouge (collectively referred to herein as "EBR") would be in violation of the provisions of Articles I, VI, or VII of the Louisiana Constitution of 1974 if it elects to declare that property immediately adjacent to a public sewer treatment plant as needed to create a "buffer zone."[1] After declaring this area as a buffer zone, EBR would then voluntarily purchase the private property surrounding the plant to establish the actual separation of private landowners from the sewer treatment plant, thus creating the "buffer zone".

## Factual History

EBR operates a waste treatment plant in north Baton Rouge, which began operating in 1960 and has experienced several expansions. The most recent expansion was initiated in 1997 and completed in 1998. As your request explains, this sewer treatment plant was formerly at the heart of a lawsuit filed (in 1996) by landowners surrounding the plant seeking damages for inconvenience, mental suffering, and property damages, allegedly caused by the operation of the plant.[2]

---

[1]    In subsequent communications with this Office, you noted that you were specifically concerned with La. Const. Art. I § 4, La. Const. Art. VI § 23, and La. Const. Art. VII § 14.

[2]    *Mitchell, et. al. v. East Baton Rouge Parish, et. al,* 09-1076 (La. App. 1 Cir. 7/16/10) 2010 WL 2889572, overruling *Mitchell, et. al. v. East Baton Rouge Parish, et. al,* No. 432,169 Div. M, Section 26, 19th Judicial District Court, State of Louisiana.

In the case noted above, the First Circuit Court of Appeal overturned much of the trial court's decision to award damages to the various Plaintiffs.[3] The trial court had held that there were valid claims for damages by several of the Plaintiffs, and also dismissed other Plaintiffs' claims because of their failure to appear in Court, failure to be close enough to the sewerage plant to establish damage, and failure to establish ownership to the property at issue in the case.[4] Subsequently, the First Circuit Court of Appeal, in the unpublished opinion, overturned a great majority the trial court's decision, reversing much of the awarded stigma, discomfort, and inconvenience damages and further holding that only one of the Plaintiffs had proven actual damages (but in an amount far less than that found at the trial court).[5] Because the First Circuit decision was not overturned by the Supreme Court, it fundamentally established that the Plaintiffs' **claims for damages** of inconvenience, mental suffering, and property damages, allegedly caused by the operation of the plant were not valid claims.

You note that "[r]ecently, a number of the Plaintiffs from the lawsuit described above have approached the Metro Council complaining of the operation of the plant, the same complaints made in the courts and requesting that the Metro Council authorize the City/Parish to purchase the property adjacent to the plant, allowing those residents to move." While the factual history above sets the background for your current opinion request, this judicial decision (denying the Plaintiffs allegations of damages caused by the sewerage plant), does not effect EBR's authority to make decisions with regard to creating a buffer zone around the sewerage plant. Therefore, this decision must be considered independently under each of the Constitutional provisions at issue.

### La. Const. Art. I § 4

Article I § 4 of the Louisiana Constitution sets forth the general premise that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property."[6] While everyone has the right to acquire, own, control, use, enjoy, protect, and dispose of his/her private property, the Constitution goes on to state that "[t]his right is subject to reasonable statutory restrictions and the reasonable exercise of the police power."[7]

---

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

[6]    La. Const. Art. I § 4 (A).

[7]    *Id.*

You specifically ask whether declaring a buffer zone and acquiring the property surrounding the sewer treatment plant is a violation of La. Const. Art. I § 4(B)(1). This provision states that:

> [p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.

La. Const. Art. I § 4(B)(2) further states, in pertinent part, that, under La. Const. Art. I § 4(B)(1), "public purpose" shall be limited to the following:

> (b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:

> \*\*\*

> (v) Public utilities for the benefit of the public generally.

> \*\*\*

> (c) The removal of a threat to public health or safety caused by the existing use or disuse of the property.

Under La. Const. Art. I § 4(B)(1), if the property is acquired in a method other than gift or grant (purchase, condemnation proceeding, or otherwise), for a public purpose, then just compensation must be paid to the owner. Pursuant to Subsection (B)(2), subsections (b) and (c), it appears that EBR will not be in violation of La. Const. Art. I § 4 if this "buffer zone" is created for one of the public purposes listed therein.

Therefore, if the property to establish the "buffer zone" is purchased from the current owners, it must be purchased for a public purpose and just compensation must be paid in exchange for the property.

**La. Const. Art. VI § 23**

La. Const. Art. VI § 23 states that:

> [s]ubject to and not inconsistent with this constitution and subject to restrictions provided by general law, political subdivisions may acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise.

La. R.S 33:1329 provides the general law by which political subdivisions may acquire property. It states:

> [a]ny parish or municipality or commission appointed under this part may acquire by gift, grant, purchase, or condemnation proceedings or otherwise, all property, including rights-of-way, necessary to effectuate arrangements concluded under the terms of this Part. Where condemnation is necessary, the parish or municipality shall follow the procedures which, under existing law, govern its acquisition of property by condemnation.

In addition to this authority of the parish to acquire property, La. R.S. 33:1236 states, in pertinent part, that:

> [t]he police juries and other parish governing authorities shall have the following powers:
>
> ***
>
> (20) To pass all ordinances and regulations which they deem necessary to govern and regulate the laying out of subdivisions, resubdivisions, roads, streets, alleys, ways, subways, viaducts, bridges, parks, parkways, boulevards, playgrounds, community centers and other public buildings, grounds, or improvements, and the location, re-location, widening, removal, vacation or extension or other improvements of such existing public works; the platting of land into lots, roads, streets, and other dedicated or private ways; the location, re-location, development, routing, and re-routing of transit and transportation lines, which in the opinion of the police jury are in the interest of the systematic planning of the parish.

Considering La. R.S 33:1329 and La. R.S. 33:1236(20) in tandem, EBR has the authority to acquire immovable property, the authority to use its property as a park, and the authority to expand or improve existing public works. These powers would consequently include purchasing property for a public purpose and declaring that area as a buffer zone, public park, and/or improvement to the current sewer plant.

La. R.S. 33:3981 also provides the governing authorities of any sewerage districts with the authority "to establish, acquire, construct, improve, extend and maintain within said district a sewerage system or systems, including such sewerage disposal facilities as may be required." Establishing a "buffer zone" around the sewer plant at issue could easily be considered an improvement of the current sewer plant.

It is the opinion of this Office that there will be no violation of La. Const. Art. VI § 23 if EBR decides to acquire property surrounding the sewer plant at issue for the purpose of

creating a buffer zone around the plant, provided it deems such a purchase to be public purpose. Since a determination of this sort is purely policy and factually based, this Office can only render an opinion on the matter using the facts with which we are supplied. Filing a declaratory judgment action in a court of competent jurisdiction would likely be the most efficient way of achieving a proper determination as to whether creation of such a buffer zone serves a valid public purpose. However, this Office has noted in prior opinions that "the exercise of a [local government's] functions 'is subject to much discretion and has traditionally been judicially granted much latitude.'"[8] The Second Circuit Court of Appeal has additionally held that "[g]enerally an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner."[9] Therefore, as long as EBR's decision is not arbitrary or capricious, it will most likely be upheld by the judicial system.

## La. Const. Art. VII § 14

La. Const. Art. VII, § 14 sets forth the general prohibition against public entities gratuitously alienating public funds or property. It provides, in pertinent part, the following:

> (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private ...

Article VII, § 14 "is violated when public funds or property are gratuitously alienated."[10] It has been the consistent opinion of this Office that in order for an expenditure of public funds to be permissible under Louisiana Constitution Article VII, § 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.[11]

---

[8]     La. Atty. Gen. Op. No. 06-0011, citing La. Atty. Gen. Op. No. 90-0289 and *Torrance v. Caddo Parish Police Jury*, 119 So.2d 617 (La. App. 2 Cir. 1960).

[9]     *Torrance v. Caddo Parish Police Jury*, 119 So.2d 617, 619 (La. App. 2 Cir. 1960).

[10]     *Board of Directors of the Industrial Development Board of the City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens of the City of Gonzales, et al.*, 2005-2298 (La. 9/6/06), 938 So.2d 11, 20.

[11]     *See* La. Atty. Gen. Op. Nos. 10-0171, 09-0271, 09-0259, 09-0251, 09-0146 and 07-0050A.

In considering element (i) above, the objectives of EBR in the current situation, the public purpose, under the facts set forth in your opinion request, would be rooted in improving the facility of the sewer plant (a public utility for the benefit of the public generally) and also in providing public health and safety benefits. Additionally, considering the history of the legal issues surrounding this particular sewer plant, another benefit of purchasing the property and creating this buffer zone will be prevent future lawsuits by surrounding landowners that may hinder or impede the operation of the sewer plant at this location, which would also benefit the general public.

Because La. R.S 33:1329,[12] La. R.S. 33:1236(20)[13], and La. R.S. 33:3981[14] provide EBR with the legal authority to acquire property for the purposes of improving the sewerage plant, and in considering this first element, it is our opinion that EBR can expend public funds for acquiring property to create a buffer zone around the sewer plant, provided EBR determines this to be a public purpose.

In considering elements (ii) and (iii) above, La. R.S. 33:4712.10 states, in pertinent part, that:

> [n]otwithstanding any other provision of law to the contrary, no political subdivision shall purchase immovable property with a value greater than three thousand dollars unless prior to such purchase the property has been appraised by a qualified appraiser.

Therefore, as long as EBR pays fair market value for any immovable property purchased, these elements should easily be satisfied. Fair market value means the price at which property would change hands between a willing buyer and a willing seller when neither party is under any compulsion to buy or sell, and both parties have a reasonable knowledge of relevant facts.[15] This Office has consistently held that "[t]he purchase of immovable property for a price that exceeds the appraised value of the property would be tantamount to a donation of public funds; and therefore, a violation of Article VII, § 14(A) of the 1974 Constitution.[16]

---

[12]     Providing the authority to acquire property.

[13]     Providing the authority to regulate the laying out of parks, other public buildings, grounds, or improvements, and the location, re-location, widening, removal, vacation or extension or other improvements of such existing public works.

[14]     Providing the authority to establish, acquire, construct, improve, extend and maintain sewer systems or sewerage disposal facilities.

[15]     La. Atty. Gen. Op. No. 09-0293. citing La. Atty. Gen. Op. Nos. 08-0226, 06-0236.

[16]     *Id.*, citing La. Atty. Gen. Op. Nos. 08-0226, 99-251, 89-581.

## CONCLUSION

Declaring that property immediately adjacent to a public sewer treatment plant is needed to create a "buffer zone," and the subsequent acquisition of this property, would not be in violation of the provisions of La. Const. Art. I § 4, La. Const. Art. VI § 23, or La. Const. Art. VII § 14, provided the Metropolitan Council of the City and Parish of Baton Rouge finds that there is a public purpose associated with such an action.

We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.

Yours very truly,

JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

BY: 

DANIEL D. HENRY JR.
Assistant Attorney General

JDC/DDH/jv

# Attachment 5 History of NWWTP Residential Buy-Out and Lawsuit Timeline

COPYRIGHT 2011 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

## Mitchell Litigation

The City/Parish recently concluded a lawsuit brought by residents living in the vicinity of the NWWTP. The suit was filed in 1996 and tried over an extended period of time that included referral of the matter to a special master in an effort to reach a settlement as well as several appeals. The matter became final in 2010 when the Louisiana Supreme Court declined to review an appellate court's determination that the plaintiffs were not entitled to recover personal injury damages.

The City/Parish made repeated attempts to settle the suit with offers to buyout area residents. The residents rejected these offers because they believed that they would be able to recover large personal injury awards through their civil suit. At numerous stages throughout the lengthy litigation, the City/Parish instructed its counsel to attempt to settle the lawsuit by offering to buy the homes located closest to the NWWTP and paying a modest amount of inconvenience damages to the plaintiffs. The plaintiffs rejected these offers because they believed that they would be able to force the City/Parish to pay them large personal injury awards in addition to damages for decreased property values. The Louisiana First Circuit Court of Appeal found that the inconvenience allegedly suffered by the plaintiffs was not compensable as a matter of law. The Louisiana Supreme Court rejected the plaintiffs' application to review the appellate court's decision, thus concluding the litigation. Following the Louisiana Supreme Court's decision, which means that the residents have no right to recover personal injury or property damages, the residents/former plaintiffs have expressed a willingness to reconsider a buyout proposal from the City/Parish.



# Exhibit C
# Baton Rouge's July 30, 2012 Four (4) Year Extension Request Letter

(RE: City of Baton Rouge and Parish of East baton Rouge Consent Decree Civil Action No. 01-978-B-M3 Public Project – Buffer for the North Wastewater Treatment Plant)



**Department of Public Works**

City of Baton Rouge
Parish of East Baton Rouge

Post Office Box 1471
Baton Rouge, La 70821

July 30, 2012

<u>**CERTIFIED – RETURN RECEIPT REQUESTED**</u>

Director,
Water Enforcement Branch (6EN-W)
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region VI
1445 Ross Avenue
Dallas, Texas 75202-2733

Re: City of Baton Rouge and Parish of East Baton Rouge
Consent Decree-Civil Action No. 01-978-B-M3
Modified Request for Time Extension/Modification of the Compliance Schedule in the
Approved RMAP2 Submittal - Consent Decree Section XII (Remedial Measures – Collection
System Remedial Program) Paragraph 34-D-iii, and Section XXII (Force Majeure)

Mr. Blevins

At this time, the City of Baton Rouge and Parish of East Baton Rouge (City/Parish) hereby
requests a **four (4) year** schedule extension and corresponding modification of the approved
Second Remedial Measures Action Plan <u>compliance schedule</u> submitted by the City/Parish in
September 2008 [report titled - *Second Remedial Measures Action Plan (RMAP2) Submittal for
the Baton Rouge Sanitary Sewer Overflow Control and Wastewater Facilities Program*] which
was adopted in the *Agreement and Order Regarding the Modification of Consent Decree* (April
2009) by the Department of Justice (DOJ), United States Environmental Protection Agency
(EPA), and Louisiana Department of Environmental Quality (LDEQ).  This formal modified
request is based on meetings and discussions with DOJ, EPA, LDEQ, and third parties during
the past year; the most recent of which took place on July 24, 2012.

The City/Parish is now requesting an additional one (1) year, to the previously requested three
(3) year extension schedule (submitted July 1, 2011), for a total extension request at this time of
**four (4) years**.  This modified request comes after one (1) year of its original submission, and
is due largely to the delays with court approval, third party lawsuits, and interventions with the
original extension request. These significant delays with the original extension approval created
a circumstance where the City/Parish couldn't start the NWWTP projects as soon as expected,
and as such has pushed other 3rd milestone projects out for up to a year.

The extension request, and corresponding modified compliance schedule, will extend the final
compliance date to **December 31, 2018**. This extended compliance date falls within the 10 - 15
year implementation period for RMAP2 completion for a medium burden utility. Note that this
request for extension will not change the objectives stated in Section V of the Consent Decree,
or the scope of projects originally adopted by the *Agreement and Order Regarding the
Modification of Consent Decree* (April 2009) that are described in the *Second Remedial
Measures Action Plan (RMAP2) Submittal for the Baton Rouge Sanitary Sewer Overflow*

*Control and Wastewater Facilities Program* (September 2008). All of the original projects will be completed (if not already functionally complete), and only the lower priority projects will have schedules that extend beyond the original deadline.

The City/Parish is proposing compliance schedule project adjustments to defer the lower priority rehabilitation projects and those capacity projects in the upper reaches of the system, while accelerating the additional North Wastewater Treatment Plant (NWWTP) Master Plan projects and NWWTP Public Project. The milestones for the major South Wastewater Treatment Plant projects and critical capacity projects that should most effectively reduce overflows and ensure wastewater treatment plant permit compliance will be maintained.

The City/Parish has put together two attachments listed below, which are included with this submittal for the benefit of DOJ, EPA, and LDEQ to help ensure a timely response to the **four (4) year** extension request. It is the intent of the City/Parish that Attachment 1- Proposed EPA Compliance Schedule takes the place of the previously submitted compliance schedule included in the July 1, 2011 original extension request. Additionally, the rest of the reasoning and justification the City/Parish included behind the original extension request still stands true, especially for issues related to force majeure, and affordability. The City/Parish continues to make significant progress on implementation of RMAP2 projects, and as of June 30, 2012 there are 19 RMAP2 projects functionally completed (ahead of schedule), 40 projects under construction, and 27 projects under design, and the City/Parish hasn't hit the peak of activities which is projected to be sometime later this year. The City/Parish wants to restate its commitment to implementing in a timely fashion the additional projects listed in Attachment 2 – Proposed Schedule for Additional Projects, especially those at and surrounding the NWWTP which include over $100 Million dollars in additional investments in system improvements.

It is very important that the City/Parish get approval of the extension and updated compliance schedules, in order for the schedule adjustments to have the desired benefits. The City/Parish requests a meeting discussing this submission with DOJ, EPA, and LDEQ as soon as possible, in order to ensure a timely response to this **four (4) year** extension request.

**Summary of Attachments**

1 – Proposed EPA Compliance Schedule

2 – Proposed Schedule for Additional Projects

I certify that the information contained in or accompanying this document is true, accurate and complete. As to identified portions of this document for which I cannot personally verify their truth and accuracy, I certify as the official having supervisory responsibility for the persons who, acting under my direct instructions, made the verification, that this is true, accurate and complete.


Sincerely,



William B. Daniel, IV
Acting Director of Public Works


Cc:    Honorable Melvin L. "Kip" Holden, Mayor-President
       Mr. John Carpenter, Chief Administrative Officer
       Mr. Michael Donnellan, US DOJ
       Dr. Al Amendariz, US EPA Region 6 Regional Administrator
       Mr. Lawrence Starfield, US EPA Region 6 Deputy Regional Administrator
       Mr. John Blevins, US EPA Region 6 Compliance Division Director (CEN)
       Ms. Suzanne Murray, US EPA (6RC)
       Ms. Cheryl Seager, US EPA (6RC-E)
       Ms. Carol Peters-Wagnon, US EPA (6EN-WM)
       Ms. Mona Tates, US EPA Region 6
       Mr. Carlos Zequeira, US EPA (6RC-EA)
       Ms. Gladys Gooden-Jackson, US EPA (6EN-WC)
       Mr. Scott McDonald, US EPA Region 6
       Mr. Rusty Herbert, US EPA Region 6
       Ms. Peggy Hatch, LDEQ
       Ms. Cheryl Nolan, LDEQ
       Mr. Perry Theriot, LDEQ
       Mr. Ted Broyles, LDEQ
       Ms. Mary Roper, Parish Attorney
       Mr. Bob Abbott, Parish Attorney's Office
       Mr. Bryan Harmon, DPW
       Mr. Jim Ferguson, DPW
       Mr. Mark LeBlanc, DPW
       Mr. David Guillory, DPW
       Mr. Michael Ellis, CH2MHILL
       Mr. Jim Hawley, CH2M HILL
       Mr. Jim Hawkey, CH2M HILL
       Ms. Jennifer Baldwin, CH2M HILL
       Mr. Gordon Garner, CH2M HILL
       Ms. Karen Johnson, CH2M HILL

# Attachment 1

# Proposed EPA Compliance Schedule as of July 30, 2012

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

# Attachment 1 – Proposed EPA Compliance Schedule

This attachment is proposed to replace the City/Parish's compliance schedule submitted by the City/Parish in the July 1, 2011 Extension Request and the September 2008 [report titled - *Second Remedial Measures Action Plan (RMAP2) Submittal for the Baton Rouge Sanitary Sewer Overflow Control and Wastewater Facilities Program*] which was adopted in the *Agreement and Order Regarding the Modification of Consent Decree* (April 2009) by DOJ, EPA, and LDEQ. This revised EPA milestone compliance schedule is depicted in Tables 1, 2, and 3. **Note that no projects have been added or deleted to these tables; all of the original projects included in the previously approved RMAP2 will still be completed.** Only the lower priority projects that fall into the last 100% Milestone column will extend beyond the original deadline.

The City/Parish is proposing compliance schedule project adjustments to defer lower priority rehabilitation projects and those capacity projects in the upper/outer reaches of the system, while accelerating the needed additional North Wastewater Treatment Plant Master Plan projects (see <u>Attachment 2 – Proposed Schedule for Additional Projects</u>), and thereby maintaining the compliance schedules for the major wastewater treatment plant projects and critical capacity projects that should most effectively reduce overflows and ensure wastewater treatment plant permit compliance. Estimated construction costs have been included for those projects that fall into the final 100% Construction Milestone of **4th Quarter 2018**. There is an estimated $260 Million dollars of RMAP2 construction projects included in that milestone.

## Category 1: Comprehensive Sewer Basin Rehabilitation

Based on sewer system digital model analysis and flow monitoring, several sub-basins within the collection system require comprehensive rehabilitation. Sewer system comprehensive rehabilitation projects will be implemented to repair or replace components of the system that are defective and permit excessive infiltration and inflow.

Overall, all of the rehabilitation projects were prioritized by working first in the outer areas of the City/Parish and then moving in. However, at the same time those areas with a greater frequency of SSO's were started in advance of those areas with less frequency, so in some cases projects were started closer to the WWTP first if they have high frequencies of SSOs. This logic was continued with the first draft of extension schedule, so those projects that were adjusted with the extension will be in areas with a lesser frequency of SSO's.

Table 1 presents the Category 1 comprehensive rehabilitation projects and anticipated delivery milestone schedules. Note that any pump station improvements are included in the projects listed in Category 2, Pump Station and Transmission Improvements on the following pages.

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

| TABLE 1 | | | | |
|---|---|---|---|---|
| **Updated EPA Consent Decree RMAP Milestones for Category 1 Projects** | | | | |
| | **33%** Construction Milestone | **66%** Construction Milestone | **100%** Construction Milestone | **Estimated Construction Cost** |
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | Millions |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |
| **Project Descriptions RMAP2 Projects** | | | | |
| Jefferson Hwy – HooShooToo Road | ✓ | | | |
| Staring Lane – Boone Drive Area Rehabilitation Project | ✓ | | | |
| Burbank Drive – Gardere Lane Area Rehabilitation Project | ✓ | | | |
| Oak Villa –Choctaw Street Area Rehabilitation Project | ✓ | | | |
| Scotland Avenue – Progress Road Area Rehabilitation Project | ✓ | | | |
| Elm Grove Garden Road – Harding Boulevard Area Rehabilitation Project | ✓ | | | |
| Sharp Road – Florida Boulevard Area Rehabilitation Project | ✓ | | | |
| Kenilworth Boulevard – Boone Drive Area Rehabilitation Project | ✓ | | | |
| Foster Drive - Government Street Area Rehabilitation Project Phase A and B | ✓ | | | |
| Silverleaf Road – Ford Street Area Rehabilitation Project | ✓ | | | |
| Brookstown Road - Evangeline Street Phase I Area Rehabilitation Project | ✓ | | | |
| Brookstown Road – Evangeline Street Phase II Area Rehabilitation Project | ✓ | | | |
| Bluebonnet Blvd – Jefferson Hwy Phase I Area Rehabilitation Project | | ✓ | | |
| Bluebonnet Blvd – Jefferson Hwy Phase II Area Rehabilitation Project | | ✓ | | |
| Highland Road – Washington Street Area Rehabilitation Project | | ✓ | | |
| Standford Avenue – Morning Glory Road Area Rehabilitation Project | ✓ | | | |
| Airline Highway – Goodwood Blvd Phase I Area Rehabilitation Project | | ✓ | | |
| Airline Highway – Goodwood Blvd Phase II Area Rehabilitation Project | | ✓ | | |
| Acadian Thruway – Claycut Road Area Rehabilitation Project | | ✓ | | |
| Acadian Thruway – Perkins Road Area Rehabilitation Project | ✓ | | | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

**TABLE 1**

**Updated EPA Consent Decree RMAP Milestones for Category 1 Projects**

| | 33% Construction Milestone | 66% Construction Milestone | 100% Construction Milestone | Estimated Construction Cost |
|---|---|---|---|---|
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | Millions |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |
| Antioch Road – Chadsford Drive Area Rehabilitation Project | | ✓ | | |
| Jones Creek Road – Tiger Bend Road Area Rehabilitation Project | | | ✓ | $12 M |
| Scenic Highway – Spanish Town Road Phase I Area Rehabilitation Project | | | ✓ | $9 M |
| Scenic Highway – Spanish Town Road Phase II Area Rehabilitation Project | | | ✓ | $9 M |
| Siegen Lane – Interstate 10 Area Rehabilitation Project | | | ✓ | $6 M |
| Interstate 110 – Hollywood Street Area Rehabilitation Project | | | ✓ | $6 M |
| Ardenwood Drive – Winbourne Street Area Rehabilitation Project | | | ✓ | $5 M |
| Flannery Road – Florida Boulevard Area Rehabilitation Project | | | ✓ | $6 M |
| East Boulevard – Government Street Area Rehabilitation Project | | | ✓ | $6 M |
| North 38th Street – Gus Young Avenue Area Rehabilitation Project | | | ✓ | $8 M |
| *Note that no projects have changed milestone columns since the original extension request dated July 1, 2011. Only the milestone dates have changed. | | | | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

## Category 2: Pump Station and Transmission Improvements

The Infoworks™ digital wastewater model was used to identify necessary increases in capacity of existing gravity trunk sewers, pump stations, and force mains in order to accommodate peak wastewater flows remaining in the rehabilitated collection system. Table 2 presents a list of Category 2 projects with corresponding milestone schedules.

| TABLE 2 | | | | |
|---|---|---|---|---|
| Updated EPA Consent Decree RMAP Milestones for Category 2 Projects | | | | |
| | 33% Construction Milestone | 66% Construction Milestone | 100% Construction Milestone | Estimated Construction Cost |
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | Millions |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |
| **Project Descriptions RMAP2 Projects** | | | | |
| Capitol Lake – Gayosa Street Area Capacity Improvements | ✓ | | | |
| Gurney Road - Joor Road | ✓ | | | |
| Sullivan Rd./Lovett Rd./Wax Rd. Sewer Upgrades | ✓ | | | |
| Comite Road – Foster Road Sewer Area Upgrades - Phase I | ✓ | | | |
| Foster Road – Hooper Road Sewer Area Upgrade | ✓ | | | |
| Zachary Area Transmission Network Improvements Phase I - 3 Pump Stations and Equalization Basin | | ✓ | | |
| Zachary Area Transmission Network Improvements Phase II – Red Mud Lakes Forcemain to NWWTP | | ✓ | | |
| Zachary Area Transmission Network Improvements Phase III – Forcemain to Highway 964 to Red Mud Lakes | | ✓ | | |
| Zachary Area Transmission Network Improvements Phase IV – Zachary Improvements | | ✓ | | |
| South Boulevard – St. Joseph Street Sewer Area Upgrades | ✓ | | | |
| Downtown Area Pump Station Improvements | | ✓ | | |
| Highland Road – Buchanan Street Sewer Area Upgrades | ✓ | | | |
| Citiplace/Essen Area - PS119 & Forcemain Improvements | ✓ | | | |
| Group Project 1A (Metro Airport Sewer Upgrades) | | ✓ | | |
| Group Project 1B (Metro Airport Sewer Area Pump Station & Forcemain Upgrades)". | | ✓ | | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

**TABLE 2**

Updated EPA Consent Decree RMAP Milestones for Category 2 Projects

| | 33% Construction Milestone | 66% Construction Milestone | 100% Construction Milestone | Estimated Construction Cost |
|---|---|---|---|---|
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | Millions |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |
| Perkins/Old Perkins Area - Booster PS 514 Improvements | | ✓ | | |
| Group Project 2 (Old Perkins – Highland Road Area Upgrades) | ✓ | | | |
| Highland Road – Burbank Drive Capacity Improvements | | ✓ | | |
| Nicholson Drive – Highland Road – Perkins Road Capacity Improvements Phase A | | ✓ | | |
| Nicholson Drive – Highland Road – Perkins Road Capacity Improvements Phase B | | ✓ | | |
| Bayou Duplantier Area Sewer Upgrades | | ✓ | | |
| 25th Street - North Acadian Thruway | ✓ | | | |
| Government St - South Acadian Thruway Sewer Area Upgrades | | ✓ | | |
| Plank Road – Kleinpeter Road Sewer Area Upgrades | | ✓ | | |
| O'Neal Lane Pipeline Improvements – Group A | | ✓ | | |
| O'Neal Lane Pipeline Improvements – Group B | | ✓ | | |
| Multiple PS - Nicholson Dr - Brightside Dr | | ✓ | | |
| Pump Station 58 Capacity Improvements | | ✓ | | |
| Staring Lane FM (Phase I - Burbank Drive to Highland Road) | ✓ | | | |
| Staring Lane FM (Phase II - Highland road to Perkins Road) | | ✓ | | |
| Staring Lane FM (Phase III - Perkins to PS58) | | ✓ | | |
| Multiple PS - Jefferson Hwy - Park Forest Dr | | ✓ | | |
| Airline Highway Pipeline Improvements | | | ✓ | $38 M |
| Multiple PS - Highland Road - Kenilworth Parkway | | | ✓ | $11 M |
| Florida Boulevard Pump Station Improvements | | | ✓ | $16 M |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

**TABLE 2**

**Updated EPA Consent Decree RMAP Milestones for Category 2 Projects**

| | 33% Construction Milestone | 66% Construction Milestone | 100% Construction Milestone | Estimated Construction Cost |
|---|---|---|---|---|
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | Millions |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |
| Plank Road Pump Station Improvements | | | ✓ | $9 M |
| Multiple PS - Highway 61 - Plank Road | | | ✓ | $6 M |
| O'Neal Lane Pump Station Improvements – Group A | | | ✓ | $13 M |
| O'Neal Lane Pump Station Improvements – Group B | | | ✓ | $10 M |
| Sherwood Forest Blvd – Goodwood Blvd Pipeline Improvements | | | ✓ | $12 M |
| Joor Road - Greenwell Springs Road Sewer Area Upgrades | | | ✓ | $7 M |
| Plank Road - Port Hudson Pride Road Sewer Area Upgrades | | | ✓ | $4 M |
| Highland Road Pipeline Improvements - Group A | | | ✓ | $8 M |
| Highland Road Pipeline Improvements - Group B | | | ✓ | $9 M |
| Oak Villa Boulevard - Monterey Boulevard Sewer Area Upgrades | | | ✓ | $7 M |
| Lovett Road – Greenwell Springs Road Sewer Area Upgrades – Group A | | | ✓ | $14 M |
| Lovett Road – Greenwell Springs Road Sewer Area Upgrades – Group B | | | ✓ | $8 M |
| Hooper Road Pump Station Improvements | | | ✓ | $12 M |
| Multiple PS - Prescott Rd - Greenwell Springs Rd | | | ✓ | $5 M |
| Multiple PS - Burbank Drive - Siegen Lane | | | ✓ | $4 M |
| Pump Station 42 | | ✓ | | |
| Pump Station 42 Forcemain - Phase I | | ✓ | | |
| Pump Station 42 Forcemain - Phase II | | ✓ | | |
| Central Consolidated Pump Stations | | ✓ | | |
| Central Consolidated Forcemains | | ✓ | | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

**TABLE 2**

Updated EPA Consent Decree RMAP Milestones for Category 2 Projects

| | 33% Construction Milestone | 66% Construction Milestone | 100% Construction Milestone | Estimated Construction Cost |
|---|---|---|---|---|
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 | **Millions** |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete | (M) |

**\*\*Note that no projects have changed milestone columns since the original extension request dated July 1, 2011. Only the milestone dates have changed.**

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

# Category 3: Wastewater Treatment and Storage

This category of projects includes wet weather improvements at the City/Parish wastewater treatment plants (WWTP's), as well as storage facilities throughout the service area. The Wastewater Treatment Projects are summarized below:

- Immediate Action Plan (IAP) South WWTP Project that includes screening, trickling filter recirculation pumping, primary treatment improvements, and bio-solids thickening improvements.

- Phase 1 Improvements at the South WWTP for Wet Weather Flow including influent pumping, screening and grit removal for a predicted flow of 345 MGD. Phase 1 also includes 64 million gallons of equalization storage at the South WWTP.

- Phase 2 Improvements at the South WWTP include wet weather flow treatment with a peak capacity of 200 MGD (as previously approved in the November 2006 RMAP2).

In addition, there are two storage projects included in this category that are sized to reduce peak flows to existing North WWTP which are listed below and depicted as well in Table 3. These storage projects are part of the transmission system which permits storage of wet weather peak flows.

- Choctaw Storage Facility
- Hooper Storage Facility

Table 3 presents a list of Category 3 projects with corresponding milestone schedules. No estimated construction costs are included for this category, since none of these projects are included in the 100% Construction Milestone.

| Table 3 | | | |
|---|---|---|---|
| Updated EPA Consent Decree RMAP Milestones for Category 3 Projects | | | |
| | | | |
| | **33%** Construction Milestone | **66%** Construction Milestone | **100%** Construction Milestone |
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete |
| **Project Descriptions RMAP2 Projects** | | | |
| Choctaw Storage and Pump Station Facility | | ✓ | |
| Hooper Storage Facility | | ✓ | |
| South WWTP IAP (Consolidated – Screening, Primary Treatment, Trickling Filter Recirculation, Sludge Handling) | ✓ | | |
| South WWTP IAP (Effluent Pumping Improvements) | ✓ | | |
| SWWTP Wet Weather Improvements -Phase I | | ✓ | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

| Table 3 | | | |
| --- | --- | --- | --- |
| Updated EPA Consent Decree RMAP Milestones for Category 3 Projects | | | |
| | | | |
| | **33%** Construction Milestone | **66%** Construction Milestone | **100%** Construction Milestone |
| Milestone Date | 1st QTR 2013 | 2nd QTR 2015 | 4th QTR 2018 |
| Construction Status | Construction Functionally Complete | Construction Functionally Complete | Construction Functionally Complete |
| SWWTP Wet Weather Improvements - Phase II (PDP portion) | | ✓ | |
| *Note that <u>all</u> of these types of projects are of high priority and are expected to stay in the same milestone categories as previously submitted in the original extension request dated July 1, 2011. | | | |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

# Attachment 2

# Proposed Schedule for Additional Projects

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

# Attachment 2 – Proposed Schedule for Additional Projects

This attachment is a listing of the additional projects that the City/Parish has undertaken outside of the Consent Decree. The City/Parish has agreed to implement a number of significant projects that will greatly help improve operation and maintenance of the treatment and collection system beyond the original Consent Decree requirements. These projects include emergency generators at the 400+ pumping stations; and the installation of a state of the art SCADA real time control system to allow the City/Parish to manage wet weather flows to maximize in system storage and treatment to reduce overflows. Other projects that the City/Parish is implementing in addition to the Consent Decree required projects include South Wastewater Treatment Plant (SWWTP) Phase 2 Master Plan Project, the extensive North Wastewater Treatment Plan (NWWTP) Public Project, the extensive NWWTP Master Plan Projects, the NWWTP Odor Control Project, the Choctaw Sewer Collection Maintenance Facility Project, and the Comite Foster Road Phase 2 Project.

## Projects Outside of Consent Decree

This category of projects includes several additional projects not required by the Consent Decree Compliance Schedule. Many of these projects will greatly improve the operation and maintenance of the wastewater collection system, WWTP's, and storage facilities. Also note that both the SCADA Project and the Standby Power Program will help optimize the overall operation of the treatment facilities and pump stations, while minimizing risks associated with SSOs. The projects are summarized below:

- **NWWTP Master Plan Projects** – Based on the *Draft Wastewater Master Plan* (CH2M HILL, 2008) and recent plant inspections, the following items were identified to be addressed at the NWWTP:

    o New raw sewage pumping station
    o New preliminary treatment
    o Comprehensive odor control
    o Plant SCADA system
    o Replace gaseous chlorine with sodium hypochlorite
    o General plant rehabilitation (electrical, mechanical, structural)
    o Standby electrical generators
    o Sludge digestion rehabilitation with gas utilization

- **NWWTP Public Project** - includes purchase of property in order to resolve odor control complaints from nearby residents of the NWWTP. The City/Parish has developed a public project for implementation which would create a buffer zone between the North WWTP and the adjacent residential neighborhood. This buffer zone will include plantings as well as stormwater improvements.

- **SWWTP Phase 2 Master Plan Project** – This project includes Master Plan improvements were outlined in the *Draft Wastewater Master Plan (CH2M HILL, May 2008).* The following are project elements that will be included as additive alternates for the SWWTP Phase 2 construction project:

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

- o Secondary electrical source consisting of on-site engine/generators
- o Improvements to the existing solids thickening and dewatering facilities including new thickened sludge mixing tanks
- o Repair and improvements to existing anaerobic digesters including a new sludge heating system utilizing digester gas and hot water boilers
- o Rehabilitation of existing buildings
- o Construction of a plant SCADA system
- o Construction of new laboratory and administration buildings

- **Stand-by Power Program –** This project will drastically reduce SSOs caused by power outages at the 400+ pump stations in the system, by providing stand-by power at the pump stations. This program consists of installing generators at every wastewater pump station and wastewater treatment facility throughout the City/Parish that can be put in place during power outages, eliminating the risk of overflows from this cause.

- **Supervisory Control and Data Acquisition (SCADA) Project -** The SCADA Project will provide telemetry and remote monitoring to all existing pump stations, new pump stations, and those pump stations being replaced. The project provides remote monitoring of operations data & alarms that will be communicated via telemetry to a centralized operations center. The centralized operations center will have control capability for major pump stations and storage facilities in the system, allowing flow control to anticipate and reduce the possibility of overflows and/or reduce their severity. The remote monitoring will help City/Parish staff quickly respond to mechanical and electrical problems at the pump stations.

- **Choctaw Sewer Collection Maintenance Facility –** The Choctaw Administration/ Maintenance Facility will consolidate several separate City/Parish facilities to one location. The facility will house the wastewater collections staff, provide warehouse and equipment storage, house the electrical and pump maintenance shops, and include a fueling station for use by City/Parish employees. The site is centrally located in the parish, so the maintenance facility will allow staff to be efficiently deployed to all areas of DPW's sewer network. The pump maintenance shop will include a pump testing pit, which allows the City/Parish to test pumps at the shop rather than testing once installed at the pump station.

- **NWWTP Odor Control Project -** the NWWTP Odor Control Project is designed to minimize odors from the WWTP headworks building.

- **Comite Drive – Foster Road Phase 2 Project -** This project includes an upgrade to the existing sewer system that runs along Comite Drive. The current sewer system in this area is individual septic systems that discharge into an open ditch along the road. A new sewer collection system is being installed to eliminate these discharges. The project consists of new sewers, forcemains, and pump stations.

Table 1 below outlines the anticipated schedule and estimated construction cost of the additional projects. Note that the schedule below is based upon time (number or months) from extension approval for the projects involving the NWWTP.

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

**Table 1**

Proposed Schedule for Projects Outside of Consent Decree

| | Scheduled Start | Scheduled Finish | Estimated Construction Cost |
|---|---|---|---|
| **NWWTP Master Plan Projects** | 6 months from Extension approval | Design – 18 months from start<br><br>Construction – 3 years from design finish | $50 M |
| **NWWTP Public Project** | 6 months from Extension approval | Design and Land Purchase – 1 year from start<br><br>Construction – 1 year from design finish | $6 M |
| **SWWTP Wet Weather Improvements – Phase II (Master Plan portion)** | Project Underway | Proposed completion by 4th quarter 2014 | $22 M |
| **Sewer System and WWTP Stand-by Power Program** | Project Underway | Completion of SSO Program | $30 M |
| **SCADA (Collection System, Operations Data and Control Center)** | Project Underway | Completion of SSO Program | $15 M |
| **Choctaw Sewer Collection Maintenance Facility** | Design Complete/ Construction start in early 2013 | Early 2015 | $15 M |
| **NWWTP Odor Control Project** | Complete | Complete | $1.5 M |
| **Comite –Foster Road Sewer Area Upgrades - Phase II** | Complete | Complete | $0.9 M |

COPYRIGHT 2012 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL